THE CITY OF OAKBROOK TERRACE, Plaintiff-Appellant, v. THE HINS-DALE SANITARY DISTRICT *et al.*, Defendants-Appellees.

Second District   No. 2—87—1139

Opinion filed July 22, 1988.

Patrick M. Loftus, of Law Offices of Hubert J. Loftus, Ltd., of Addison, for appellant.

Francis A. Spina and Jay H. Tressler, both of Tressler, Soderstrom, Maloney & Priess, of Wheaton, for appellees Du-Co Construction Company and Seaboard Surety Company.

Kathleen T. Zellner, D. Kendall Griffith, Donald W. Garlinger, and Hollis L. Webster, all of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Wheaton, for appellee Frank Novotny and Associates, Inc.

Modesto, Reynolds & McDermott and Gould & Ratner, both of Chicago, and Louis R. Main, of Scoffield & Main, of Hinsdale, for appellee Hinsdale Sanitary District.

JUSTICE NASH delivered the opinion of the court:

Plaintiff, the city of Oakbrook Terrace (the city), brought this action against defendants, Hinsdale Sanitary District (HSD), Frank Novotny and Associates, Inc. (Novotny) (engineer), and Du-Co Construction Company (Du-Co) (general contractor), for the recovery of damages for injury to its streets alleged to have been caused by the negligent installation of sanitary sewers beneath them. The trial court granted defendants' motions to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), finding that plaintiff's damages were economic losses which were not recoverable in a tort action under *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. Plaintiff appeals contending that, because it was not a party to any of the sanitary sewer contracts, the rule prohibiting the recovery of economic losses in tort was not applicable and that it was merely seeking recovery for injury to its property by defendants. We reverse.

HSD annexed into its service area the Elmhurst Countryside Subdivision located in the city of Oakbrook Terrace for the purpose of installing sanitary sewers to serve the residents. Pursuant to a sanitary district special assessment proceeding, Du-Co and Novotny contracted with HSD to perform the construction and engineering work for the project. Shortly after the sewers were installed, the street surface over the sewer trenches subsided, and this action was commenced to recover the costs of repairing the streets.

Plaintiff's first amended complaint against Novotny and Du-Co alleged that it was a third-party beneficiary of the contracts defendants had entered into with HSD and sought to recover for damages to its streets. The trial court granted defendants' motions to dismiss this complaint, finding that plaintiff was neither a party to nor a third-party beneficiary of the contracts. Plaintiff does not seek reversal of that order in its appeal.

Plaintiff repleaded and in count I of its second amended complaint alleged that HSD had commenced a sewer project which provided for

the installation of sanitary sewers below certain streets owned by the City of Oakbrook Terrace; that HSD owed the city a duty of due care in doing so, but was negligent in relation to the compaction, water content, and testing of the backfill material used above the sewer line and below the city's streets; and, that as a direct and proximate result of HSD's negligence, the pavement over the installed sewer lines in the city's streets failed, requiring repairs by plaintiff to the streets and portions of the sewer trenches below them for which damages of $591,000 were sought. Counts II and III of the second amended complaint contained similar allegations against Novotny and Du-Co, respectively.

Novotny and Du-Co filed motions to dismiss arguing that plaintiff's damages were for economic losses not recoverable under a tort theory. Plaintiff responded that it was seeking recovery for damages to its property, the streets, and that *Moorman* and its progeny specifically exclude from the definition of economic loss damage to property other than the defective product. Plaintiff also argued that, as there were no commercial dealings between plaintiff and these defendants, the economic loss doctrine was not applicable. Du-Co replied that its product was not only the sewer trench, but also the city street above the trench, and that damages for inadequate value or costs for repair or replacement of the defective product were precluded by *Moorman*.

The trial court denied Novotny's and Du-Co's motions to dismiss in a letter of opinion which stated that the *Moorman* doctrine did not apply because plaintiff was seeking recovery for damage to its property, and also rejected Du-Co's argument that plaintiff's property was part of its product. The court also found that there was no privity of contract between plaintiff and any of the defendants.

Subsequent to this order HSD filed, among other things, a third-party complaint against Seaboard Surety Company, which was surety of Du-Co's performance bond for the sewer project contract. Thereafter, Du-Co and Seaboard filed a joint motion to dismiss counts I and III of plaintiff's second amended complaint pursuant to section 2—619(a)(9) of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—619(a)(9)), arguing that the decisions in *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246, and *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 502 N.E.2d 1134, which were decided subsequent to the trial court's order denying Du-Co's earlier motion to dismiss, supported dismissal of plaintiff's claim. The motion to dismiss noted that under *Anderson* "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial

bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." (*Anderson*, 115 Ill. 2d at 153.) Defendant further alleged that plaintiff had been unable to fund the sewer project itself and had obtained the assistance of HSD because of its superior borrowing power, that plaintiff was intimately involved in the design and construction of the sewers, and that the sewer project contemplated not only the installation of sewers in the city streets but also the restoration of the road surfaces above the sewers. The motion to dismiss argued that as plaintiff's losses were merely due to defeated expectations of a commercial bargain, the fact that plaintiff had no contractual remedy against defendants was irrelevant in light of the supreme court's decision in *Anderson*.

At the hearing on the motion to dismiss, defendants Du-Co and Seaboard tendered the discovery depositions of Richard Sarallo, mayor of the City of Oakbrook Terrace, and Leo Cavanaugh, engineer for Novotny and Associates, Inc., for consideration by the trial court in support of the motion to dismiss. The pertinent testimony of Mayor Sarallo was that prior to the commencement of the sewer project, the plaintiff had considered the feasibility of installing sewers to service the new subdivision and had engaged Novotny to undertake preliminary planning for the project. Initially, plaintiff contemplated financing the project by issuing general obligation bonds, adopting an ordinance for a special assessment, applying for Federal grants, or a combination thereof. Thereafter, HSD annexed the portion of the city where the subdivision was located for the purpose of installing sanitary sewers, and it took over matters relating to the funding, engineering, and construction of the sewers. Plaintiff contacted HSD, suggesting that it retain Novotny to provide engineering services for the project because Novotny had prepared preliminary specifications for the sanitary sewers, and, with Novotny as consulting engineer on the project, plaintiff hoped that it would have some voice in the project. At the time that efforts were underway on the sewer project, plaintiff had also been contemplating a separate road rehabilitation project. During the course of the sewer project, Novotny suggested that the sewers be put under the street, rather than the adjacent right-of-way, so that the city streets could be rebuilt at the same time the sewers were installed. Initially the plans and specification for the sewer project were to rebuild the streets with an A—3 finish, which was the original type of finish on the streets. During the course of construction a Novotny employee asked plaintiff whether it wanted a bituminous asphalt finish rather than an A—3 finish, and informed plaintiff that the change in specifications would cost plaintiff $27,000. HSD ap-

proved the specification change and, under the substituted plan, Du-Co was to install one inch of asphalt as a substitution for the A—3 finish called for in the original plans without a change in cost to HSD. An additional one-half inch of asphalt was required by the change in specifications at a cost of $27,000 to plaintiff. After the project was completed, settling of the streets occurred over the trenched areas which required plaintiff to reexcavate the sewer trenches, change the backfill and repave the whole street.

In his deposition, Cavanaugh testified that he was an engineer for Novotny and, while the sewer project began in 1972, he was not involved in the project until 1976. He stated that Novotny was a consulting engineer for HSD and had been involved with HSD on prior sewer projects involving plaintiff; on this job, Novotny answered to HSD, which would make all final decisions about the sewer project. Initially, the sewers were to be installed alongside the road but the plans were changed to locate them under the streets so that plaintiff's streets could be restored at the same time.

While the record does not indicate that plaintiff entered into an agreement with any of defendants for the purpose of installing sanitary sewers under the city streets, HSD's answer to plaintiff's second amended complaint states that the sewer project was undertaken pursuant to article 9, division 2, of the Illinois Municipal Code (Ill. Rev. Stat. 1975, ch. 24, pars. 9—2—1 through 9—2—144) and that it had authority to construct sewers under plaintiff's streets pursuant to section 312 of the Sanitary District Act of 1917 (Ill. Rev. Stat. 1975, ch. 42, par. 312).

The trial court granted Du-Co's and Seaboard's motion to dismiss, finding that plaintiff's damages were economic losses precluded by *Moorman* and that the absence of a contract remedy was irrelevant in light of *Anderson.* Thereafter, the trial court granted Novotny's motion to dismiss on the same grounds.

Plaintiff appeals contending that, because it did not have any commercial or other expectation in the installation of the sewers, *Moorman* is inapplicable and that it was merely seeking recovery for damages defendants' product caused to plaintiff's street property. Defendants Du-Co and Seaboard contend that Du-Co's product encompassed the city streets above the sewer lines as well as the trench and backfill; that plaintiff's claimed damages involved only the cost of repair and replacement of the allegedly defective work of Du-Co; that because plaintiff and its residents were commercial beneficiaries in this context, plaintiff's damages arose from defeated commercial expectations; and, that the availability of a contract remedy to plaintiff

is irrelevant. Novotny's arguments on appeal are similar. We conclude that the *Moorman* doctrine does not apply to the circumstances of this case.

■■ ■ Our supreme court has held that damages for solely economic losses cannot be recovered in tort. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443.) Economic losses have been defined as " 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation]" and " 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' [Citation.]" (*Moorman*, 91 Ill. 2d at 82). The foundation of the *Moorman* doctrine is that when a qualitative defect in a product is involved, contract law, which protects expectation interests, provides the appropriate standards for recovery of damages. (*Moorman*, 91 Ill. 2d at 81.) A negligence action is proper only when harm above and beyond disappointed expectations has been shown. "A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177, 441 N.E.2d 324.) In *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246, the court reaffirmed its decision in *Moorman*, when it held that the recovery of solely economic losses "due to defeated expectations of a commercial bargain" are precluded in a tort action. The court also made clear that the existence of a contract remedy is irrelevant to the determination of whether contract or tort law provides the appropriate set of rules for recovery of damages. *Anderson*, 115 Ill. 2d at 153. See also *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 551, 502 N.E.2d 1134.

■■ While we agree with defendants' argument that the absence of a contractual remedy against them by plaintiff is not relevant in this case, we conclude that a prerequisite to the application of the *Moorman* doctrine is that plaintiff's damages arise from a defeated expectation in defendants' product, which has not been shown here.

In *Moorman*, the plaintiff had purchased a grain storage tank from the defendant manufacturer which developed a crack shortly after its installation caused by a qualitative defect in the tank. The plaintiff's damages were not caused by an unreasonably dangerous defect in a product. (*Moorman*, 91 Ill. 2d at 85.) The plaintiff's complaint sounded in strict liability, misrepresentation and negligence. (*Moorman*, 91 Ill. 2d at 73.) The court noted that the law of sales cod-

ified in the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 1—101 *et seq.*) carefully articulated the economic relations between suppliers and consumers of goods (*Moorman*, 91 Ill. 2d at 78), and that permitting recovery of economic losses in tort would interfere with that legislatively enacted framework. (*Moorman*, 91 Ill. 2d at 91.) The court noted that a purchaser of goods could protect itself against the risk of inadequate performance of a product by bargaining for a warranty or could pay a lower purchase price in lieu of a warranty. (*Moorman*, 91 Ill. 2d at 79.) It concluded that the plaintiff's damages there arose from defeated expectations in the fitness of the product it had purchased to perform its intended function and that any recovery should be governed by the principles of contract law. *Moorman*, 91 Ill. 2d at 86.

In *Redarowicz v. Ohlendorf*, the plaintiff had purchased a home from its original owner, and when its chimney and adjoining brick wall began to separate from the house, the plaintiff filed suit against the original builder on a tort theory. (*Redarowicz*, 92 Ill. 2d at 174-75.) The court found that while the plaintiff's claim did not relate to a hazardous condition of the house, it did involve disappointed expectations as the plaintiff merely received less than he bargained for in purchasing the house, a cause of action traditionally governed by contract law. *Redarowicz*, 92 Ill. 2d at 177-78.

In *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, defendant Ledbetter was apparently a general contractor retained by Commonwealth Edison to install precipitator units at its facility which were manufactured by C-E Walther, Inc. Ledbetter subcontracted with Anderson to perform electrical work on the units under the terms of which Ledbetter was to inspect Anderson's work. Anderson did not have a contract with any other party, including Walther. A contract between Walther and Ledbetter incorporated Walther's specifications manual which required Walther to inspect specified portions of the project, including Anderson's work, and report any deviations from the specifications to Ledbetter. After Anderson had completed its work on the project, Walther required Anderson to redo certain work which cost Anderson an additional $288,802.44, and Anderson brought an action in tort against Walther alleging that Walther negligently failed to supervise and inspect its work. (*Anderson*, 115 Ill. 2d at 148-49.) The court held that, regardless of Anderson's ability to recover in a contract action, Anderson's damages were economic losses arising from defeated expectations of a commercial bargain in that Anderson lost the anticipated profits from its contract with Ledbetter. The court noted that Anderson was not without a remedy as it had a

pending contract action against Ledbetter. *Anderson*, 115 Ill. 2d at 153.

■ From our review of *Anderson*, and the cases which have preceded it, we conclude that the *Moorman* doctrine does not apply to the present case, as plaintiff is merely seeking recovery for damage to its property, the streets, as a result of the alleged negligent installation of the sewers by defendants; plaintiff does not here seek the recovery of damages caused by a defective product in which it had a commercial or other expectant interest, but for harm to plaintiff's street property alleged to have been caused by defendants' negligence in carrying out their separate contracts to which plaintiff was not a party.

While plaintiff may have had some commercial expectations related to the one-half inch of better asphalt Du-Co placed over portions of plaintiff's streets (presumably just over the trench area) at a cost to plaintiff of $27,000, the city does not allege that the asphalt used was of an inferior quality or that it was improperly applied so as to damage the street and seek recovery of damages on that basis. Rather, plaintiff alleges that negligent acts relating to the installation of the sewers caused the pavement over the sewer lines to settle and damage plaintiff's streets.

We find no basis to conclude that plaintiff had any expectation interest in the installation of the sewers and reject Du-Co's speculative argument that if plaintiff had adequate funds, it would have undertaken the sewer project; the fact is that plaintiff did not undertake the project, HSD did. Furthermore, that plaintiff may have had some involvement in the project does not change our conclusion that plaintiff had no expectation interest in it, other than restoration of its streets after installation of the sewers. While Du-Co argues that plaintiff and its residents must be assigned the status of a "commercial beneficiary," defendants do not suggest that plaintiff or its residents were third-party beneficiaries of the sanitary sewer contracts, and it is clear that plaintiff was not a party to any agreement relating to the installation of the sewers. HSD apparently had independent authority to install its sewers under plaintiff's streets pursuant to section 312 of the Sanitary District Act of 1917 "but so as not to incommode the public use thereof." (Ill. Rev. Stat. 1975, ch. 42, par. 312.) It does not appear that any peripheral agreement existed between HSD and plaintiff defining the scope of any duty owed by HSD to plaintiff to restore the streets.

■ As we view the facts in this case, HSD had statutory authority to install the sewers and during the course of its project plaintiff's

property was damaged. Plaintiff alleges in its complaint that, because of defendants' negligent acts relating to the compaction, water content, and testing of the backfill material used above the sewer line and below the city's streets, the streets were not properly restored, to plaintiff's damage. Plaintiff here simply seeks recovery for damages to its property because of alleged negligent acts of defendants. (See *People ex rel. Department of Transportation v. Molter* (1985), 133 Ill. App. 3d 164, 166-67, 478 N.E.2d 1102.) A municipal corporation has the power to sue and be sued (Ill. Rev. Stat. 1985, ch. 24, par. 2—2—12; *City of Spring Valley v. Franckey* (1909), 150 Ill. App. 435) and to act to prevent injury to its streets and other property (Ill. Rev. Stat. 1985, ch. 24, par. 11—80—10). Defendants do not suggest plaintiff's complaint fails to properly state a cause of action in tort for the claimed damages, but rely upon the *Moorman* doctrine to defeat the action. See *Gaunt & Haynes, Inc. v. Moritz Corp.* (1985), 138 Ill. App. 3d 356, 359, 485 N.E.2d 1123.

Novotny also argues that because its engineering services were a product, any allegation that plaintiff's repair costs flowed from negligent performance of these services is precluded by *Moorman*. Similarly, Du-Co argues that plaintiff is seeking recovery for the repair and replacement of Du-Co's allegedly defective product, *i.e.*, the backfill in the sewer trench and resurfacing of the street over the trench. Both arguments ignore the fact that plaintiff did not have a commercial expectation in the installation of the sewers, the process of which, it is claimed, damaged plaintiff's streets.

Accordingly, the judgment of the circuit court is reversed, and the cause is remanded for further proceedings.

Reversed and remanded.

DUNN and INGLIS, JJ., concur.