GAIL S. WERBLOOD, Plaintiff-Appellant, v. COLUMBIA COLLEGE OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—87—1712

Opinion filed February 16, 1989.—Rehearing denied April 18, 1989.

Thomas D. Rosenwein and Beverly L. Bailey, both of Karon, Morrison & Savikas, Ltd., of Chicago, for appellant.

R. Peter Carey and Theodora M. Rand, both of Mandel, Lipton & Stevenson, Ltd., of Chicago, for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Gail S. Werblood (Werblood) appeals from trial court orders dismissing certain counts of her complaint against Columbia College of Chicago (Columbia College), the Board of Trustees of Columbia College, President Mirron Alexandroff of Columbia College (President Alexandroff), and Dean Lya Dym Rosenblum of Columbia College (Dean Rosenblum), for failure to state claims for which relief could be granted (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(a)) and finding no just reason to delay enforcement of or appeal from this disposition (107 Ill. 2d R. 304(a)). The trial court dismissed counts of the complaint sounding in intentional interference with prospective economic advantage and negligent administration of college bylaws on the ground that these counts improperly sought damages for economic loss barred by *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, and *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246. The trial court also dismissed a count alleging fraud against President Alexandroff on the premise that it failed to state sufficient facts regarding his authorization of fraud allegedly committed by Dean Rosenblum against Werblood.

We conclude that the count in Werblood's complaint alleging negligent administration of college bylaws was properly found to be precluded by the economic loss doctrine of *Moorman* and *Anderson Electric*. We further determine that the counts in the complaint alleging intentional interference with prospective economic advantage, although not barred by the economic loss doctrine, were nevertheless properly dismissed for insufficient factual allegation regarding a reasonable expectancy of future employment at either Columbia College or at another institution of higher education in the Chicago area. We also conclude that the count in the complaint alleging fraud on the

part of President Alexandroff was properly dismissed because of insufficient factual allegations regarding President Alexandroff's authorization of Dean Rosenblum's allegedly fraudulent representations to Werblood. Accordingly, we affirm the orders of the trial court.

BACKGROUND

According to the allegations of Werblood's complaint as ultimately amended, which we accept as true for the purpose of review (see, *e.g.*, *Abrams v. Echlin Corp.* (1988), 174 Ill. App. 3d 434, 437, 528 N.E.2d 429), Werblood was a faculty member of Columbia College from 1978 to 1985. She had an employment contract with Columbia College for the 1984-85 academic year, and this contract incorporated the rules and policies of Columbia College regarding the engagement, separation, and tenure of faculty members. According to these rules and policies, faculty members were advised by their department chairpersons by March 30 of a given contract year if the faculty member would not be retained for the following academic year; failure to so notify faculty members by the date prescribed caused automatic renewal of the faculty member's employment contract for the following academic year. Dismissal of faculty members during the period of their employment contracts required written notice and a due process hearing.

In March 1985, Werblood was advised by her department chairperson that her performance was "competent," and she was thereafter assigned courses for the 1985-86 academic year. On May 13, 1985, however, Dean Rosenblum informed Werblood that Columbia College was rescinding its contract with her for the upcoming 1985-86 academic year and that her salary and employment benefits would be terminated on June 30, 1985. Werblood received no explanation for the termination, nor a due process hearing, although she requested one.

Werblood filed suit against Columbia College, its Board of Trustees, President Alexandroff, and Dean Rosenblum. As amended, the complaint alleged breach of contract by Columbia College (count I); fraud by President Alexandroff and Dean Rosenblum (count II); intentional interference with Werblood's prospective economic advantage by President Alexandroff and Dean Rosenblum, both individually and as agents of the Board of Trustees, on the premise that the method by which Werblood's employment was terminated "stigmatized" her and would effectively interfere with her ability to find suitable employment in her field at other area institutions of higher education (count III); intentional interference by President Alexandroff and Dean Rosenblum with Werblood's prospective economic advantage, on the ground that termination of Werblood's employment by these

defendants deprived Werblood of the opportunity to gain tenure with Columbia College at the end of the 1985-86 academic year (count IV); and negligence on the part of the Board of Trustees of Columbia College for its failure to manage and direct the affairs of Columbia College as required by its bylaws regarding faculty hiring and firing (count V).

Following briefing and argument upon defendants' motion to dismiss the complaint for failure to state claims for which relief could be granted (Ill. Rev. Stat. 1987, ch. 110, par. 2—615(a)), the trial court dismissed the counts regarding fraud and intentional interference with prospective business advantage, relying upon the economic loss doctrine of *Moorman* and *Anderson Electric.* The trial court dismissed the fraud count as it pertained to President Alexandroff on the ground that it failed to allege specific facts to show that he had authorized the fraudulent scheme allegedly undertaken by Dean Rosenblum against Werblood. Thereafter the trial court found no just reason to delay enforcement of or appeal from these rulings. (107 Ill. 2d R. 304(a).) This appeal followed.

OPINION

Werblood argues that the trial court should not have dismissed the fraud count against President Alexandroff for failure to state a claim. In her complaint, Werblood alleged that President Alexandroff committed fraud upon her when he authorized Dean Rosenblum to assure Werblood that her faculty employment with Columbia College would continue from 1985 until at least the spring of 1987, during which time Werblood intended to and did in fact enroll in and pursue studies to secure a Ph.D. at Union Graduate School. Werblood alleged that Dean Rosenblum's representations to her, and President Alexandroff's authorization that Dean Rosenblum make these representations to her, constituted a fraudulent scheme whereby Werblood was encouraged to remain at Columbia College, to pursue graduate studies, and to forego pursuit of other employment opportunities, until President Alexandroff and Dean Rosenblum could select other personnel to replace Werblood. Werblood further alleged that Dean Rosenblum's representations were false, that President Alexandroff and Dean Rosenblum knew these representations were false when they were made, and that the representations were made with the intent to induce Werblood to act thereon to her detriment.

The trial court dismissed the fraud count with respect to President Alexandroff because it failed to allege facts showing specific words or actions by President Alexandroff which authorized Dean Ro-

senblum to make the alleged misrepresentations to Werblood. We agree with the trial court's reasoning and disposition.

■ Werblood's fraud count against President Alexandroff was premised on the notion that Dean Rosenblum acted as President Alexandroff's agent with respect to the alleged fraudulent representations made by Dean Rosenblum to Werblood. "Agency may be established and its nature and extent shown by parol evidence, whether direct or circumstantial, and reference may be had to the situations of parties ***, acts of parties, and other circumstances germane to the question, [including] *** one [person] acting for another under circumstances implying knowledge on the part of the supposed principal of such acts ***. [Citations.]" *City of Evanston v. Piotrowicz* (1960), 20 Ill. 2d 512, 518, 170 N.E.2d 569.

■ Applying these principles to the case at bar, we find that Werblood's fraud count alleges no direct or circumstantial facts to demonstrate that Dean Rosenblum was acting as agent to President Alexandroff with respect to the allegedly fraudulent representations at issue here. For example, Werblood does not allege that Dean Rosenblum told her that President Alexandroff had advised Dean Rosenblum to make the alleged misrepresentations to Werblood. Werblood does not allege that President Alexandroff said or did anything to indicate that he was aware of and concurred in the alleged misrepresentations made by Dean Rosenblum to her. In light of these considerations, we conclude that the trial court properly dismissed Werblood's fraud complaint as it pertained to President Alexandroff. See also *Citizens Savings & Loan Association v. Fischer* (1966), 67 Ill. App. 2d 315, 322-23, 214 N.E.2d 612.

■ The remaining issues pertain to Werblood's claims for intentional interference with prospective economic advantage and her claim for negligent administration of the bylaws of Columbia College. Defendants maintain that these claims are barred by the economic loss doctrine set forth by the Illinois Supreme Court in *Moorman* and *Anderson Electric*. In *Santucci Construction Co. v. Baxter & Woodman, Inc.* (1986), 151 Ill. App. 3d 547, 502 N.E.2d 1134, *appeal denied* (1987), 115 Ill. 2d 550, the court determined that the economic loss doctrine in this State precludes a claim for negligent administration of a construction project, because such a cause of action in tort seeks economic losses occasioned by defeated expectations of a commercial enterprise. However, the court further determined that the economic loss doctrine does not bar a claim for intentional interference with prospective economic advantage, because such a cause of action falls within the exceptions to the economic loss doctrine stated

in *Moorman* and *Anderson Electric.* (See also *HPI Health Care Services, Inc. v. Mt. Vernon Hospital* (1988), 172 Ill. App. 3d 718, 729, 527 N.E.2d 97; *Fence Rail Development Corp. v. Nelson & Associates, Ltd.* (1988), 174 Ill. App. 3d 94, 99-100, 526 N.E.2d 849.) In reaching these conclusions, the *Santucci* court reasoned as follows:

"Addressing first whether the negligence action as alleged in count I is barred under the economic-loss doctrine established in *Moorman* \*\*\*, the recently filed opinion of our supreme court in *Anderson Electric* \*\*\* is dispositive of this issue. In *Anderson Electric,* the court reaffirmed its position that there can be no recovery in tort solely for economic losses—economic losses being defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequential loss of property, without any claim of personal injury or damage to other property. (115 Ill. 2d 146, 149.) It also held that a plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract. (115 Ill. 2d 146, 149-50.) In the instant case, the damages sought [in count I] are for economic losses, and the holdings in *Moorman* and *Anderson Electric* require the dismissal of the negligence action pleaded in count I.

\* \* \*

[With respect to plaintiff's claims for intentional interference with contract and with prospective economic advantage,] [w]e are well aware that the court in *Moorman* only referred to two exceptions to the economic-loss doctrine, *i.e.,* where one intentionally makes false representations and where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations. [Citation.] Nevertheless, we do not believe the questions addressed and decided in *Moorman* and in the subsequent supreme court decisions of *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171,441 N.E.2d 324, *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125, and *Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, were intended to abolish causes of action for intentional interference with contract and prospective advantage.

The purpose of imposing liability in tort upon persons who interfere with the contractual relations of others is to protect one's interest in his contractual relations against forms of in-

terference which, on balance, the law finds repugnant. [Citations.] Because the very interest protected by the torts of intentional interference with contractual relations and prospective advantage is the reasonable expectation of economic advantage, economic losses are the damages recoverable. [Citations.] *Moorman* and its progeny arose out of economic losses suffered from alleged negligence or strict liability whereas the economic loss in the interference torts is occasioned by an intentional and improper interference with the performance of a contract or of a prospective contractual relation with third parties. We conclude that these interference actions are more similar to the two exceptions noted in *Moorman* and are still viable causes of action in Illinois." *Santucci,* 151 Ill. App. 3d at 551-52, 553-54.

■ Defendants have not presented, and we are unable to discern, any sound reason to deviate from this precedent. Accordingly, we conclude that the economic loss doctrine bars Werblood's claim for negligent enforcement or administration of college bylaws, but does not preclude Werblood's claims for tortious interference with prospective economic advantage in the case at bar. Consequently, we affirm the trial court's dismissal of count V of Werblood's amended complaint alleging negligent administration of the college bylaws based on the economic loss doctrine of *Moorman.*

Defendants further contend that Werblood's claims for intentional interference with prospective economic advantage, if not barred by the economic loss doctrine, are factually insufficient to state claims for which relief may be granted. We consider these arguments to the extent that they were briefed and argued before the trial court and renewed in this appeal, since "it is the judgment and not what else may have been said by the lower court that is on appeal to the court of review. [Citation.]" *In re Marriage of Lenhardt* (1988), 176 Ill. App. 3d 429, 435, 531 N.E.2d 123.

Werblood relies on the theory of intentional interference with prospective economic advantage in both counts III and IV of her amended complaint. In count III, Werblood alleged that because of her background and experience, she had "the reasonable expectancy of being employed full time at another institution of higher education in the Chicago area" in her field "if she left Columbia by voluntary resignation or by discharge in which Columbia followed its own proper procedures and customary practices." Werblood alleged that President Alexandroff and Dean Rosenblum also "knew that [she] could be so employed by other institutions." Werblood further alleged

that the President and Dean were aware "that the market for full-time academic appointments in the Chicago area for [Werblood's] art and humanities disciplines is one of extremely limited openings" and that they knew "that such expectance of future employment could be interfered with if [Werblood] were to be improperly stigmatized in any manner and that such improper stigmatization would occur if [she] were discharged by the President and/or Dean (a) after the date required for advising faculty of non-renewal of contracts, (b) without hearing, (c) without written explanation, and (d) any summary manner without conformity to Columbia's established procedures."

Werblood alleged that such "stigmatization" would result because it would "suggest[ ] to other institutions that the terminated faculty member engaged in activities requiring immediate termination or otherwise has such problems or deficiencies that would warrant immediate termination by Columbia's administration." She alleged that President Alexandroff and Dean Rosenblum "intentionally interfered with said expectancy in the manner in which they purported to discharge [Werblood], thereby effectively stigmatizing her and rendering her unemployable at other institutions of higher education in the Chicago area in [her] art and humanities disciplines."

Defendants assert that Werblood's amended complaint is factually insufficient because it fails to allege that Werblood had a reasonable expectancy of employment with a third party. In order to state a claim for intentional interference with prospective economic advantage, a plaintiff must allege, *inter alia,* that "any clearly identifiable group of third parties contemplat[ed] prospective contractual arrangements with the plaintiff." (*Parkway Bank & Trust Co. v. City of Darien* (1976), 43 Ill. App. 3d 400, 403, 357 N.E.2d 211; see also *Heying v. Simonaitis* (1984), 126 Ill. App. 3d 157, 162, 466 N.E.2d 1137.) Werblood fails to allege that any institution of higher education in the Chicago area contemplated or contemplates employment of Werblood in her chosen field, nor does Werblood allege that she has attempted to seek employment at any institution of higher education in the Chicago area. Consequently, count III is factually insufficient to state a claim and was properly dismissed by the trial court.

Count IV of Werblood's complaint was also factually insufficient to state a claim for intentional interference with prospective economic advantage. In count IV, Werblood alleged that at the time that Dean Rosenblum advised her that her employment with Columbia was secure until at least the spring of 1987, both Dean Rosenblum and President Alexandroff "were revising Columbia's procedures so that, *inter alia,* faculty would receive credit for all prior full-time employment,

thereby immediately entitling [Werblood] to tenure at Columbia. Said revisions were scheduled to be implemented by the spring of 1986, and Columbia's faculty had been so advised." Werblood further alleged that President Alexandroff and Dean Rosenblum "knew that the revisions would have the effect of creating tenure for [Werblood]" and that in "order to deprive [Werblood] of her prospective economic advantage in such tenure," President Alexandroff and Dean Rosenblum "did wrongfully and improperly discharge [her] in May 1985, even though such a discharge was arbitrary and capricious, and was in violation of the rules, procedures, representations, customs and practices of Columbia." Werblood also alleged that President Alexandroff and Dean Rosenblum "acted with the intent and purpose of interfering with [her] prospective economic advantage and preventing her from achieving tenure," to her detriment.

■ Defendants assert, and we agree, that this count of the amended complaint is factually insufficient. In order to establish an action for intentional interference with prospective economic advantage, a plaintiff must allege *inter alia* "a reasonable expectancy of a valid business relationship or economic advantage \*\*\*. \*\*\* [T]he mere hope of continued employment, without more, does not \*\*\* constitute a *reasonable* expectancy as must exist to state a cause of action for tortious interference." (Emphasis in original.) *Williams v. Weaver* (1986), 145 Ill. App. 3d 562, 568-69, 495 N.E.2d 1147.

Here, Werblood alleges no more than a hope of continued employment in the event that revisions, drafted but not alleged to have been implemented, would have accorded her tenure at Columbia College. Because the revisions had not been finalized and implemented at the time Werblood was discharged, she did not at that time have a "reasonable expectancy" of a continuation of her employment at Columbia based on tenure. As a result, we find that the trial court properly dismissed count IV of Werblood's amended complaint.

For the reasons stated, the orders of the circuit court of Cook County are affirmed.

Affirmed.

LINN and JOHNSON, JJ., concur.