Larry **MILLER** and **Kimberly Miller**, Plaintiffs,

v.

**LONG–AIRDOX COMPANY**, a corporation, Defendant–Third Party Plaintiff–Appellant,

v.

**AMAX COAL COMPANY**, Third Party Defendant–Appellee.

No. 89–1875.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 28, 1990.

Decided Oct. 1, 1990.

Thomas Keefe, Cook, Shevlin, Keefe & Ysursa, Belleville, Ill., for plaintiffs.

W. Thomas Coghill, Jr., James P. Leonard, Kurt E. Reitz, Mark S. Schuver, Thompson & Mitchell, Belleville, Ill., for defendant-third party plaintiff-appellant.

G. Daniel Kelley, Gary J. Dankert, Ice, Miller, Donadio & Ryan, Indianapolis, Ind., Terry Black, Campbell, Furnall, Moore & Jacobsen, Mt. Vernon, Ill., for third party defendant-appellee.

Before BAUER, Chief Judge, and POSNER and MANION, Circuit Judges.

MANION, Circuit Judge.

Larry Miller, a miner who lived in Indiana, worked for Amax Coal Company in Amax's Wabash underground mine. Most of the Wabash mine is located in Illinois, and all entry portals to the mine are located in Illinois. Part of the mine, however, extends east under the Wabash River into Gibson County, Indiana. On April 19, 1985, Miller was working in the Indiana portion of the mine on a machine known as a "feeder." Tragically, Miller's right hand became caught in a sprocket on the feeder. Miller's right arm was mangled, and eventually had to be amputated.

Miller collected benefits under Illinois' workers' compensation law. Miller also sued Long–Airdox Company, the feeder's manufacturer, in Illinois state court. Long–Airdox removed the case to federal court (the basis of removal being diversity of citizenship). In federal court Long–Airdox filed a third-party claim for contribution against Amax, alleging that Amax negligently operated the feeder. Since Amax and Long–Airdox were both incorporated under Delaware law, no diversity of citizenship existed between them. However, the third-party claim fell within the district court's ancillary jurisdiction because it arose out of the "same occurrence or transaction" as Miller's claim. See *Hartford Acc. & Indem. Co. v. Sullivan*, 846 F.2d 377, 381–82 (7th Cir.1988); see also *Shields v. Consolidated Rail Corp.*, 810 F.2d 397, 398 (3d Cir.1987).

Amax filed a summary judgment motion, contending that Indiana law applied to Long–Airdox's contribution claim, and that Indiana law does not allow contribution among joint tortfeasors. See *Elcona Homes Corp. v. McMillan Bloedell, Ltd.*, 475 N.E.2d 713, 715 (Ind.App.1985); *Barker v. Cole*, 396 N.E.2d 964, 971 (Ind.App. 1979). The district court agreed with Amax and entered judgment dismissing Long–Airdox's contribution claim. Long–Airdox appeals. Although Miller's claim against Long–Airdox remains to be resolved, the district court properly entered judgment under Fed.R.Civ.P. 54(b) so we have jurisdiction over this appeal.

On appeal, Long–Airdox contends the district court erred by applying Indiana rather than Illinois law to Long–Airdox's contribution claim. The parties agree that the choice-of-law rules of Illinois, the forum

state in this action, govern which state's law applies to Long–Airdox's contribution action. See *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Shields*, 810 F.2d at 399; see also *Pittway Corp. v. Lockheed Aircraft Corp.*, 641 F.2d 524, 526 (7th Cir. 1981). In tort cases (including third-party actions for contribution), Illinois has adopted the "most significant relationship" test of the Restatement (Second) of Conflict of Laws. See *Ingersoll v. Klein*, 46 Ill.2d 42, 262 N.E.2d 593 (1970); *Vickrey v. Caterpillar Tractor Co.*, 146 Ill.App.3d 1023, 100 Ill.Dec. 636, 638–39, 497 N.E.2d 814, 816–17 (4th Dist.1986); see also *Pittway*, 641 F.2d at 526.

■■■ As its name implies, the "most significant relationship" test seeks to find which state bears the most significant relationship to the occurrence and the parties involved in the action, and then applies that state's laws. Restatement (Second) of Conflicts of Laws § 145(2) sets out several contacts a court is to analyze to determine which state has the most significant relationship with the litigation. Those contacts include: the place where the injury occurred; the place where the conduct causing the injury occurred; the parties' domiciles, residences, places of incorporation, and places of business; and the place where the parties' relationship, if any, is centered. Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred. Illinois law presumes that the law of the state where the injury occurred will govern "unless another state has a more significant relationship to the occurrence or to the parties involved." *Ferguson v. Kasbohm*, 131 Ill.App.3d 424, 86 Ill.Dec. 605, 607, 475 N.E.2d 984, 986 (1st Dist.1985); see also *Ingersoll*, 262 N.E.2d at 596; *Pittway*, 641 F.2d at 526. This presumption is most difficult to overcome where the conduct causing the injury occurred in the same state where the injury occurred. "When the injury occurred in a single, clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the

state of the applicable law with respect to most issues involving the tort." Restatement § 145, Comment e, at 420.

■■ It is undisputed that Miller's injury occurred in Indiana. We agree with Amax and the district court that the conduct that caused Miller's injury also occurred in Indiana. Long–Airdox argues feebly that Amax's negligence might have occurred in Illinois because Amax might have altered the feeder (by removing or altering a guard from the machine meant to keep people from getting caught in the sprocket as Miller did) in Illinois. But Long–Airdox makes this argument on appeal only in its reply brief, and in the district court Long–Airdox never challenged Amax's assertion that the conduct causing Miller's injury occurred in Illinois. We could thus hold that Long–Airdox has waived this argument. See *Reynolds v. East Dyer Development Co.*, 882 F.2d 1249, 1253 n. 2 (7th Cir.1989). In any event, Long–Airdox's argument is pure speculation: nothing in the record indicates where Amax might have altered the guard (or even that Amax did alter the guard). More importantly, the relevant conduct here was not so much removing or altering the guard as it was actually operating the feeder with the guard removed or altered. Altering or removing the guard could harm Miller only if Amax operated the feeder in that condition; there is no question that Amax employees were operating the feeder in Indiana when Miller's injury occurred.

Long–Airdox points out several Illinois contacts in this case. For example, although Amax's principal place of business is in Indiana, Amax conducts substantial operations in Illinois. Most of the Wabash mine lies beneath Illinois, and the entry portals to the mine are in Illinois. Both Amax and Long–Airdox are licensed to do business in Illinois, and both maintain offices in Illinois. Amax hired and paid Miller in Illinois; it is fair to say the relationship between Amax and Miller was centered in Illinois. But despite these Illinois contacts, we would be inclined to agree with Amax, absent some other exceptional circumstance, that Indiana law should gov-

ern Long–Airdox's contribution action. This result would follow from Illinois law's presumption that the law of the state where the injury occurred will normally apply, a presumption strengthened by the fact the conduct injuring Miller occurred in the same state (Indiana). After all, Indiana has a strong interest "in having its law applied to a dispute that concerns the consequences of torts committed" within its borders. *Shields,* 810 F.2d at 401. We do not think the Illinois contacts Long–Airdox has identified would be sufficient, in the normal case, to give Illinois a more significant relationship with the occurrence and the parties than Indiana has.

■ This is not, however, the normal case, and there is one factor in this case that persuades us Illinois rather than Indiana law should govern Long–Airdox's contribution claim. An Indiana statute provides:

> In the case of any mine or mines, the shaft or opening of which is located in any state other than the state of Indiana, the employees in the entries or workings of such mines extending into and within the state of Indiana, shall be controlled and governed by the laws of the state in which the shaft or opening of such mine is located in any and all matters pertaining to their employment, including *compensation laws and suits for damages for personal injuries.*

Ind.Code Ann. § 22–10–2–6 (West 1981) (emphasis added). Indiana law itself provides that Illinois law is to govern both Miller's workers' compensation claim and the underlying tort suit in this case. Indeed, as we have seen, Miller received workers' compensation benefits under Illinois law. And, Amax does not dispute that Illinois law governs Miller's action against Long–Airdox.

Amax argues that § 22–10–2–6 does not require that we apply Illinois law to Long–Airdox's contribution claim because that section on its face applies only to *employees.* Long–Airdox's contribution suit is not a suit by or against an employee, so, says Amax, § 22–10–2–6 does not apply to the contribution action. We agree that

§ 22–10–2–6 does not on its face require applying Illinois law to the contribution claim, as it requires applying Illinois law to Miller's underlying personal injury suit and Miller's workers' compensation claim. Section 22–10–2–6 would not prevent a court that applies a strict *lex loci delicti* conflict of law rule, or a court that merely tallies up the contacts in a case and applies the law of the state that has the most contacts (despite those contacts' relative significance) from applying Indiana law in this case. However, Illinois does not apply a mechanical contact counting approach; instead, Illinois law requires that we analyze the contacts' significance to determine which state has the greater interest in having its law applied. See *Vickrey,* 100 Ill. Dec. at 639, 497 N.E.2d at 817; *Estate of Barnes,* 133 Ill.App.3d 361, 88 Ill.Dec. 438, 442, 478 N.E.2d 1046, 1050 (1st Dist.1985).

By mandating that Illinois law govern Miller's personal injury and workers' compensation claims, § 22–10–2–6 tips the scale in favor of finding Illinois has a greater interest in having its law apply to Long–Airdox's contribution claim. First off, it makes little sense to apply Indiana's law regarding contribution to a case involving Illinois tort law. When a state formulates its tort law, it must (at least implicitly) balance several different policies including deterring wrongdoers, compensating injured parties, spreading the risk of loss from certain activities, and trying to accomplish these goals without overly discouraging productive activity. Whether or not to allow contribution among joint tortfeasors can be an important part of this balance. For example, a state may provide generous compensation to injured parties or strict standards of care, but temper the effect of these provisions by providing contribution so that the loss may be spread among several defendants. Contribution can also affect the certainty and amount of a plaintiff's recovery by encouraging settlement. See *Lowe v. Norfolk and Western Ry. Co.,* 124 Ill.App.3d 80, 79 Ill.Dec. 238, 249, 463 N.E.2d 792, 803 (5th Dist.1984).

Indiana has decided that not allowing contribution among joint tortfeasors best

serves its tort compensation scheme. See *Shields,* 810 F.2d at 400. That is a policy decision we should respect, but it is one that is not relevant in this case because Indiana's tort law does not apply in this case (significantly, by Indiana's own choice). On the other hand, Illinois has determined that allowing contribution and equitably spreading damages among defendants best serves its tort compensation scheme. Since Illinois tort law applies to Miller's personal injury suit, and since Long–Airdox and Amax both do business in Illinois (business from which Miller's injuries ultimately arose), Illinois has a strong interest in having its policy regarding contribution apply to a contribution claim arising from Miller's personal injury claim.

One could argue that Indiana has an interest in protecting its workers' compensation scheme and in protecting employers doing business in Indiana from paying more than Indiana law requires. Before Indiana passed its Workmen's Compensation Act, employees injured at work had to sue their employers to recover for their injuries. Such suits were expensive and time-consuming, and recovery was far from certain since the employee had to prove negligence and the employer could raise the defenses of contributory negligence, assumption of risk, and the fellow servant rule. The Workmen's Compensation Act changed this, providing injured employees with a remedy without having to prove employer fault. In exchange, the Act guaranteed the employer a fixed and predictable liability, and provided an exclusive remedy, under which he could anticipate probable costs. See *Tribbett v. Tay Mor Industries,* 471 N.E.2d 332, 334–35 (Ind. App.1984); Ind.Code Ann. § 22–3–2–6.

Allowing contribution against employers for employee injuries would force employers to pay more for employee injuries than the fixed amount set by the Workmen's Compensation Act. This would effectively circumvent the Act's exclusive remedy provision and deprive the employer of the balance struck in the Act between compensating injured employees and protecting the employer from excessive liability. Cf. *Vickrey,* 497 N.E.2d at 817 (discussing the effect of contribution on Missouri's workers' compensation law, which like Indiana's provided that workers' compensation remedies were exclusive). But while this is a valid policy, it is irrelevant in this case for the same reason that Indiana's policy not allowing contribution is irrelevant. Indiana has chosen to allow Illinois law to govern Miller's workers' compensation claim. Indiana thus has no interest in how contribution affects the exclusivity of Miller's workers' compensation remedy because any such effect would not affect Indiana's Workmen's Compensation Act. And, Indiana has no interest in this case in protecting Amax from paying more than the fixed remedy workers' compensation provides. Section 22–10–2–6 makes no exception for workers' compensation laws that do not provide exclusive remedies; thus, § 22–10–2–6 mandates applying Illinois workers' compensation law, even if the employer might be liable under that law beyond a fixed and certain statutory liability. Unlike Indiana, Illinois has determined that spreading losses equitably among defendants is more important than protecting the exclusivity of its workers' compensation remedy. Thus, even where an employer has already paid compensation for an employee's loss through the workers' compensation system, Illinois allows third-parties sued by the employee to seek contribution from the employer. See *Vickrey,* 497 N.E.2d at 817. While allowing contribution would not undermine any interest Indiana has in preserving its workers' compensation system, not allowing contribution would defeat Illinois' policy of spreading tort losses equitably among defendants. Illinois thus has the greater interest in having its law apply to Long–Airdox's contribution claim.

To sum up, Illinois law should apply to Long–Airdox's contribution claim. Indiana Code § 22–10–2–6, which provides that Illinois law shall apply to Miller's personal injury and workers' compensation claims, makes insignificant the fact that Miller's injury and the conduct causing that injury occurred in Indiana. Applying Indiana law would not advance any Indiana policy,

while at the same time undermining legitimate Illinois policies, and applying Illinois law would advance Illinois' policies while not undermining any Indiana policy. Therefore, we hold that Illinois law governs Long–Airdox's contribution claim, and reverse the district court's judgment and remand for further proceedings.