**GANTON TECHNOLOGIES, INC., Plaintiff,**

v.

**QUADION CORPORATION and O.H. Materials Corporation, Defendants.**

**QUADION CORPORATION, Third–Party Plaintiff,**

v.

**H.D.R. INFRASTRUCTURE, INC., et al., Third–Party Defendants.**

No. 89 C 6869.

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1990.

Timothy J. McGonegle, Russell R. Eggert, Ashcraft & Ashcraft, Ltd.; Edmund B. Moran, Jr.; and Robert Graham, Kenneth Kroot, and Ben Beringer, Jenner & Block, Chicago, for plaintiff.

Byron E. Starns, Susan M. Robiner, Leonard, Street & Deinard, Minneapolis, Minn.; Terence M. Heuel, Esposito & Heuel; Paul W. Schroeder, Cheryl L. Urbanski, Jones, Day, Reavis & Pogue, Chicago, Ill.; and E. Joel Wesp and James R. Vaughn, Wesp & Osterkamp, L.P.A., Columbus, Ohio, for defendants.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Third-party plaintiff Quadion Corporation ("Quadion") brought this action against third-party defendant H.D.R. Infrastructure, Inc. ("HDR") alleging breach of contract, negligence, and entitlement to indemnification and/or contribution. HDR has moved to dismiss this third-party complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. For the reasons stated below, the court grants HDR's motion in part and denies HDR's motion in part.

## FACTS

The facts alleged in the third-party complaint are as follows. On or about March 24, 1986, Quadion and HDR entered into a contract whereby HDR would provide engineering observation services at Quadion's Addison Die Casting facility in Addison, Illinois (the "Site"). The services were to be performed during the course of remediation activities at the Site conducted by O.H. Materials ("OHM") to clean up PCB contamination to a level set forth in a contract between Quadion and OHM. (Complaint, ¶ 5.) Throughout the cleanup activities, HDR was Quadion's representative at the Site and oversaw OHM's remediation activities. (Complaint, ¶ 7.)

On or about April 15, 1987, Quadion was informed by counsel for Metalmasters, Inc. (or Ganton Technologies, Inc. ("Ganton")), its successor-in-interest to the Site, that additional PCB contamination had been discovered on the Site. (Complaint, ¶ 9.) Since this discovery, Quadion has incurred additional response costs investigating and disposing of the PCB contamination. Ganton, too, has expended funds for PCB cleanup. (Complaint, ¶¶ 10–11.) On or about September 13, 1989, Ganton served a summons and complaint upon Quadion alleging that it is entitled to recover damages from Quadion arising from the PCB contamination at the Site. (Complaint, ¶ 12.) In response, Quadion brought this third-party action against HDR on October 13, 1989.

## DISCUSSION

### I. CHOICE OF LAW

The parties agree that the breach of contract claim (Count I) is governed by Nebraska law in accordance with the choice of law provision in the contract. However, the parties disagree over which state's law applies to the negligence and contribu-

tion/indemnification claim. Quadion believes Illinois law applies, and HDR claims that Nebraska law applies.

■ In diversity actions, the court is bound to apply the law of the forum state, including its choice of law rules. *U.S. Fire Ins. Co. v. Beltmann North American Co.*, 883 F.2d 564, 565–66 (7th Cir.1989). In tort cases, including third-party actions for contribution and indemnification, Illinois has adopted the "most significant relationship" test. *Miller v. Long–Airdox Co.*, 914 F.2d 976 (7th Cir.1990); *Albert Trostel & Sons Co. v. Canadian Imperial Bank of Commerce*, No. 82 C 7536, slip op. (N.D.Ill. August 21, 1984) This test seeks to find which state bears the most significant relationship to the occurrence and the parties involved in the action, and then applies that state's laws. *Id.* Courts analyze several contacts to determine which state has the most significant relationship to the litigation. *Id.* Generally, in a tort case, the two most important contacts are the place where the injury occurred and the place where the conduct causing the injury occurred. *Id.*[1]

■ The negligent conduct alleged by Quadion occurred in Illinois. While the question of where the injury occurred is a more difficult question, it was clearly not in Nebraska, a state to which Quadion has no significant connection. The parties' relationship is centered in Illinois since that is where the contract called for HDR to provide engineering observation services for Quadion. Together these factors establish that the occurrence and the parties here have a more significant relationship with Illinois than Nebraska. Thus, the court will apply Illinois law to Counts II and III.

## II. COUNT I: BREACH OF CONTRACT

In Count I, Quadion alleges that HDR materially breached its contract with Quadion in that it failed to provide engineering observation services in a reasonable and prudent manner. (Complaint, ¶ 8.) Under

the subheading "Standard of Performance and No Warranties," the contract states:

All services of ENGINEER [H.D.R.] and its independent professional associates, consultants and subcontractors will be performed in a reasonable and prudent manner in accordance with generally accepted engineering practice.

■ HDR responds that an indemnity provision in the contract contains express language which bars all claims, whether it is based on contact, tort or any related contribution or indemnity theory. (Mem. in Support, p. 8.) The indemnity provision states:

OWNER [Quadion] agrees to indemnify, save harmless and defend ENGINEER [H.D.R.] from and against any and all costs, expenses, fees, losses, claims, demands, liabilities, suits, actions and damages whatsoever arising out of or related to the PROJECT or this Agreement.

Under Nebraska contract law, a party cannot be indemnified for its own negligence unless the contract contains express language to that effect or clear and unequivocal language that that is the intention of the parties. *Chicago & N.W. Transp. Co. v. Emmet Fertilizer & Grain Co.*, 852 F.2d 358, 360 (8th Cir.1988). HDR asserts that the clauses "any and all" and "whatsoever arising out of or related to" "unequivocally and unambiguously indicate that it was the intention of the HDR–Quadion agreement that Quadion would indemnify HDR for all claims regardless of whether the claims were predicated upon HDR's negligence or not." (Mem. in Support, p. 8.)

A contract must be construed as a whole and, if possible, effect must be given to every part thereof. *Crowley v. McCoy*, 234 Neb. 88, 449 N.W.2d 221, 284 (1989). Thus, indemnification clause should be read in a manner which would not render the duty of care provision meaningless. A reading of the indemnification clause in isolation would indicate that the parties intended Quadion to bear the risk of HDR's

---

**1.** The contacts analyzed by a court also include the parties' domiciles, residences, places of incorporation, and places of business, as well as the place where the parties' relationship is centered. *Miller v. Long–Airdox Co.*, 914 F.2d 976.

negligence as part of the basis of the bargain. However, in case of negligence by HDR, this interpretation of the indemnification clause renders the duty of care clause meaningless and leaves Quadion remediless. The court does not believe that the parties intended this result. Instead, the indemnification clause should be read as protecting HDR against suits from third parties. In any case, the intent behind the indemnification clause is sufficiently ambiguous for the court to believe that the contract lacks the requisite unequivocal expression of Quadion's intent to indemnify HDR for its own negligence.[2]

[redacted] Furthermore, HDR argues that Quadion has pleaded "*no* explanation of how, when, or where H.D.R. was ... in breach of its contract." (Reply, p. 5 (emphasis in original)). In a diversity action, the court is to assess the adequacy of the pleadings under federal law, rather than the stricter requirements of Illinois law. *Cleland v. Stadt,* 670 F.Supp. 814, 816 (N.D.Ill.1987). Quadion need only set forth "a short and plain statement of the claim." Fed.R.Civ.P. 8(a). As long as the defendants are on sufficient notice of the nature of the claim, the plaintiff has satisfied federal pleading requirements. *Cleland,* 670 F.Supp. at 816. The court believes that Quadion more than adequately set forth a claim for breach of contract. Accordingly, the court must deny HDR's motion to dismiss Count I.

## III. COUNT II: NEGLIGENCE

In Count II, Quadion alleges that "HDR failed to exercise reasonable care and skill and failed to perform its obligations under the contract in a reasonable and prudent manner and in accordance with generally accepted engineering practices." (Complaint, ¶ 18.) HDR claims that the Illinois Supreme Court's decision in *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), bars Quadion from recovering damages for this tort action. The court agrees.

The *Moorman* doctrine states that purely economic losses are not recoverable in tort. *Id.* 61 Ill.Dec. at 753, 435 N.E.2d at 450. The court must determine (1) whether *Moorman* is applicable to service-related negligence claims, and (2) whether the damages alleged by Quadion are purely economic.

[redacted] Quadion inaccurately argues that *Moorman* is limited to sale-of-goods cases. (Mem. in Opposition, p. 11.) The Illinois Supreme Court has held that a plaintiff may not recover purely economic losses against a builder for negligence (*Morrow v. L.A. Goldschmidt Associates, Inc.,* 112 Ill.2d 87, 97–98, 96 Ill.Dec. 939, 943, 492 N.E.2d 181, 185 (1986)) or against a manufacturer for negligent failure to supervise (*Anderson Electric, Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986)). Several Illinois appellate courts have barred the recovery of economic damages against an architect and/or engineer for negligence (*Tolona Pizza Products Corp. v. Davy Mckee Corp.,* 187 Ill.App.3d 365, 134 Ill.Dec. 942, 945, 543 N.E.2d 225, 228 (1st Dist.1989); *Fence Rail Development Corp. v. Nelson & Assoc., Ltd.,* 174 Ill.App.3d 94, 123 Ill. Dec. 799, 803, 528 N.E.2d 344, 348 (2d Dist.1988); *People ex rel. Skinner v. Graham,* 170 Ill.App.3d 417, 120 Ill.Dec. 612, 524 N.E.2d 642 (4th Dist.1988)); against a lawyer for negligence (*Collins v. Reynard,* 195 Ill.App.3d 1067, 142 Ill.Dec. 719, 553 N.E.2d 69 (4th Dist.1990)); and against a college and its officials for intentional interference with prospect of economic advantage and negligent administration (*Werblood v. Columbia College of Chicago,* 180 Ill.App.3d 967, 129 Ill.Dec. 700, 704, 536 N.E.2d 750, 754 (1st Dist.1989)).

Thus, the court finds that since the *Moorman* doctrine can be applied to negligence claims in connection with products or services, including claims of engineering malpractice and negligent failure to super-

2. Cases relied upon by HDR concern contracts with indemnification clauses similar to the one at issue here. While these cases found that the clauses revealed an intent to shift the risk for the indemnitee's own negligence, they contained no allegations that other provisions in the contracts would be rendered meaningless by such an interpretation.

vise, it may be applied to negligence claims against an engineering observation service. "[T]he relevant inquiry concerns the type of loss sustained and not the nature of the relationship giving rise to the loss." *Collins*, 142 Ill.Dec. at 722, 553 N.E.2d at 72.

Economic losses have been defined as damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property. *Moorman*, 61 Ill.Dec. at 752, 435 N.E.2d at 449. Economic losses are the diminution in value of a product because it is inferior in quality and does not work for the general purpose for which it was manufactured and sold. *Id.* A negligence action is proper only when harm above and beyond disappointed expectations has been shown. *Oakbrook Terrace v. Hinsdale Sanitary District*, 172 Ill. App.3d 653, 122 Ill.Dec. 698, 702, 527 N.E.2d 70, 74 (2nd Dist.1988). A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects. *Id.*

In *Anderson Electric*, 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246, Anderson, a subcontractor who entered into a contract to perform electrical work for a general contractor, brought an action in tort against a manufacturer alleging that the latter negligently failed to supervise and inspect Anderson's work. As a result of this negligence, Anderson was required to redo certain work. The court held that regardless of Anderson's ability to recover in a contract action, the *Moorman* doctrine barred Anderson's tort action. Anderson's damages were economic losses arising from defeated expectations of a commercial bargain in that the Anderson lost the anticipated profits from its contract with the general contractor. *Id.* 104 Ill.Dec. at 692, 503 N.E.2d at 249.

■ Similarly, Quadion does not allege that HDR's negligence was the direct and proximate cause of any personal injury or property damage. Instead, the complaint asks for the cost which has been and may be incurred for remediation and decontamination of the Addison site. (Complaint,

¶ 20.) Such costs are clearly economic losses arising from defeated expectations of a commercial bargain. The direct and proximate result of any negligence on HDR's part is the cost of remedying the defective service, or consequent loss of profits from the suit by Ganton. Thus, the court finds that the *Moorman* doctrine bars Quadion's negligence action against HDR. Accordingly, HDR's motion to dismiss Count II must be granted.

## IV. COUNT III: INDEMNIFICATION AND/OR CONTRIBUTION

In Count III, Quadion asserts that, since any damages recovered by Ganton against Quadion are the direct and proximate result of HDR's wrongful acts or omissions, Quadion is entitled to obtain indemnity and/or contribution from HDR to the extent of any judgment that may be entered in favor of Ganton against Quadion. (Complaint, ¶¶ 25–26.)

### A. Indemnification

■ Indemnity is a common law doctrine providing for the complete shifting of liability on a showing that there was a pre-tort relationship between the guilty parties and a qualitative distinction between their conduct. *Heinrich*, 76 Ill.Dec. at 803, 459 N.E.2d at 938. As there is no express indemnification provision in the contract which would require HDR to indemnify Quadion, Quadion must be relying upon an implied indemnity theory. However, in view of the Contribution Act, implied indemnity no longer exists in Illinois. *Stephan v. Sears, Roebuck and Co.*, 147 Ill.App.3d 833, 101 Ill.Dec. 363, 365, 498 N.E.2d 687, 689 (1st Dist.1986). Thus, Quadion's claim for indemnification must be dismissed.

### B. Contribution

■ Contribution in Illinois is a statutory remedy which involves the sharing of payment of damage awards and is available to all parties who are "subject to liability in tort arising out of the same injury...." *Heinrich v. Peabody Int'l Corp.*, 99 Ill.2d 344, 76 Ill.Dec. 800, 803, 459 N.E.2d 935,

938 (1984) (quoting Ill.Rev.Stat. ch. 70, ¶ 302(a)). The only tort claim that Ganton is asserting against Quadion is fraud in the inducement. (Ganton Complaint, ¶¶ 23–29.) Intentional tortfeasors are not entitled to contribution under the Illinois Contribution Among Joint Tortfeasors Act (Ill.Rev.Stat. 1987, ch. 70, ¶ 301 *et seq.*) (the "Contribution Act"). *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill.2d 179, 131 Ill.Dec. 155, 167, 538 N.E.2d 530, 542 (1989). Since the only tort alleged by Ganton is an intentional one, the court must dismiss Quadion's contribution claim.

## CONCLUSION

For the reasons stated above, HDR's motion to dismiss Count I is DENIED, and HDR's motion to dismiss Counts II and III is GRANTED. The case is set for further status on January 17, 1991 at 10:00 a.m.