## CONSOLIDATED RAIL CORPORATION, Plaintiff–Appellant,

v.

## ALLIED CORPORATION and General Electric Railcar Services Corporation, Defendants–Appellees.

### No. 88–3424.

United States Court of Appeals, Seventh Circuit.

Argued June 9, 1989.

Decided Aug. 15, 1989.

Harold Abrahamson, Michael C. Adley, Abrahamson, Reed, Adley & Enslen, Hammond, Ind., for plaintiff-appellant.

Thomas H. Fegan, Raymond R. Cusack, Thomas J. Andrews, Johnson, Cusack & Bell, Chicago, Ill., for Allied Corp.

Frank J. Galvin, Joseph Stalmack, Joseph Wleklinski, Galvin, Stalmack, Kirschner & Clark, Hammond, Ind., for General Elec. Railcar Services Corp.

Before FLAUM and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FLAUM, Circuit Judge.

This case illustrates once again that in litigation, as in so many other areas of endeavor, the first move may spell the difference between success and failure. Plaintiff's first move was to bring its action in federal district court in Indiana. As a result, the district court was obliged to use Indiana substantive law to decide the

legal issues in the case. The district court held that under Indiana law the plaintiff could not state a cause of action and thus dismissed the case as to these defendants. 692 F.Supp. 924. We affirm.

## I.

On February 3, 1985, a tank car located at Plaintiff Consolidated Railroad Corporation's (CONRAIL) Elkhart, Indiana yard emitted toxic gases into the air. The car which emitted the toxic fumes was managed and maintained by defendant General Electric Railcar Services Corp. (GERSCO). It began its journey to Elkhart at a chemical plant in Canada owned by defendant Allied Corporation (Allied). After being filled with anhydrous hydrogen fluoride, a highly toxic substance, the car was shipped from Canada to Metropolis, Illinois. At Metropolis, the chemicals were unloaded by Allied employees and the car was labelled by them as empty. According to CONRAIL's complaint, however, the car was not empty but still contained an unknown amount of the hazardous chemical.

From Metropolis, the car was transported to Burlington Northern Corporation's rail yard in Cicero, Illinois.[1] The car was added to other cars and, pursuant to an agreement between CONRAIL and Burlington Northern, transported by CONRAIL from Cicero to CONRAIL's yard in Elkhart. Prior to departing Cicero, CONRAIL employees noticed a cloud of smoke emanating from the tank car in question. They notified Burlington Northern's yard master who, after receiving a report from his inspectors, cleared the train for departure. A videotape taken of the train as it departed the Cicero yard later confirmed that the car was leaking. The car finally arrived in Elkhart where leakage of the anhydrous hydrogen fluoride caused CONRAIL to effect the evacuation of nearly 1500 residents. Subsequently, CONRAIL voluntarily paid approximately $125,000 to Elkhart residents who, because of the chemical leak, required medical treatment, sustained economic losses in the form of lost wages, or suffered property damage.

CONRAIL brought this suit to recover from the defendants all of its voluntary expenditures. In its complaint, CONRAIL alleged that Allied is liable because it negligently failed to: (1) fully unload the tank car; (2) warn CONRAIL that the tank car was not empty; (3) correctly label the car; and (4) seal the car prior to shipment. CONRAIL claims that GERSCO is liable because it negligently failed to inspect and maintain the car in question.

The district court, accepting the parties' characterization of the case as an action for contribution among joint tortfeasors, granted the defendants' motion to dismiss. Applying Indiana's choice of law rules for torts, the court first found that the substantive law of Indiana would apply to this case. The court then held that the case must be dismissed because Indiana does not recognize contribution among joint tortfeasors. The plaintiff has appealed, claiming that the district court erred in applying Indiana substantive law and should instead have applied Illinois law.

## II.

In a diversity action such as this one, we look to the law of the forum to determine the choice of law. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The forum is Indiana and thus Indiana principles of choice of law will apply.

We must first determine what choice of law rules Indiana would apply to actions for contribution among joint tortfeasors, the only cause of action alleged by CONRAIL. Our research has failed to disclose, and the parties have not cited, any Indiana cases dealing with that question. The

---

1. Burlington Northern Corporation was also named as a defendant in this action but is not before us on this appeal. The district court held that an indemnity provision possibly existed between Burlington Northern and CONRAIL and thus refused to grant Burlington's motion to dismiss for failure to state a cause of action. While there is no final judgment as to Burlington Northern, the district court did enter final judgment as to ALLIED and GERSCO pursuant to Rule 54(b).

question is not an easy one. An action for contribution is based on equitable principles, in the nature of unjust enrichment, resulting from an overpayment by one of a group of tortfeasors. *Nationwide Mutual Insurance Company v. Philadelphia Electric Co.*, 443 F.Supp. 1140, 1148–49 (E.D. Pa.1977) (under Pennsylvania law contribution among joint tortfeasors sounds in equity and quasi-contract); 18 C.J.S. *Contribution* § 2 (1985). Thus, it might be sensible to apply the law of the state where the overpayment occurred resulting in the unjust enrichment. *See* Robert A. Leflar, *American Conflicts Law* 274 (3d Ed.1977). Nevertheless, in the majority of jurisdictions, the choice of law rules used in tort cases are applied to actions for contribution among joint tortfeasors. *See, e.g., Mech v. Pullman Standard*, 136 Ill.App.3d 939, 92 Ill.Dec. 45, 484 N.E.2d 776, 777 (1984); *Schulhof v. Northeast Cellulose, Inc.*, 545 F.Supp. 1200, 1203 (D.Mass.1982). As neither party has argued for a different rule, we will follow the majority approach.

Until recently, Indiana used the *lex loci delicti* rule advocated by the First Restatement of Conflicts to decide choice of law questions in tort cases. That rule required a court to use the law of the state in which the tort occurred to decide the substantive issues in the case. The tort was said to have occurred in the state in which the last act necessary to complete the tort took place. As the injury is usually, but not always, the last act necessary to complete the tort, the *lex loci delicti* rule usually resulted in choosing the law of the place of injury.

The *lex loci delicti* rule has been severely criticized over the last few decades as leading to arbitrary results in some cases. *Kaczmarek v. Allied Chemical Corp.*, 836 F.2d 1055, 1057 (7th Cir.1987). In response to that criticism, Indiana has recently modified its choice of law rules for torts. *Hubbard Manufacturing Co., Inc. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind.1987). The current rule in Indiana is that the *lex loci delicti* rule will be applied only where the place of the tort has a significant contact to the legal action. *Id.* Where the contact with the place of the tort is insignificant,

then the court must consider other factors such as:

1) the place where the conduct causing the injury occurred;

2) the residence or place of business of the parties; and

3) the place where the relationship is centered.

*Id.* at 1073–74 (citing Restatement (Second) of Conflicts of Laws § 145(2) (1971)).

In *Hubbard*, Greeson brought a wrongful death action against Hubbard, an Indiana corporation, alleging defective manufacture of a lift truck. *Id.* at 1072. Greeson's husband, an Indiana resident, was killed while working in a lift unit, manufactured by Hubbard, maintaining street lights in Illinois. *Id.* The court found that the place of the tort, Illinois, had an insignificant contact to the litigation. The court noted that the decedent worked in Illinois, that the coroner's inquest was held in Illinois, and that the decedent's family was receiving workmen's compensation benefits from Illinois, but held that these contacts with the place of the tort were insignificant. *Id.* at 1074. The court then applied the factors listed above and decided that Indiana had the more significant relationship and contacts with the litigation. The court especially noted that "plaintiff's two theories of recovery relate to the manufacture of the lift in Indiana." *Id.*

The district court in this case found that Indiana, the place of the tort, did have significant contacts with the litigation. According to the court, "very significant events occurred within Indiana, including the injuries and losses for which Conrail paid. Moreover, if Conrail is deemed to to have been a joint tortfeasor ... its conduct appears to have occurred wholly within Indiana." Thus, the court, without having to reach the Second Restatement factors mentioned in *Hubbard*, held that Indiana law should apply to this action.

The district court, by focusing on the injuries and losses to Elkhart residents, followed the majority approach of looking to the underlying tort to help determine

which state's law to apply in an action for contribution among joint tortfeasors. *See Seitter v. Schoenfeld,* 678 F.Supp. 831, 837–38 (D.Kan.1988) (courts look to place of underlying tort to determine which state's law to apply in cases involving contribution among joint tortfeasors) (collecting cases). We cannot agree that the proper focus is on the underlying tort and thus disagree that the injuries and losses to Elkhart citizens give Indiana a significant contact with *this* litigation. The current litigation involves only a question of who will bear the ultimate financial responsibility for the damages arising from the chemical leak. The citizens of Elkhart, who have already been made whole, have no interest in this case. Thus, we do not believe Indiana would follow those courts which concentrate on the underlying tort to determine which state's law to apply in cases such as this. Still, we agree with the district court that CONRAIL's acts within Indiana give that state a significant contact with the litigation.

As noted in *Hubbard,* whether the place of the tort has a significant contact with the litigation depends in large part on the theory of recovery propounded in the litigation. In this case the theory behind CONRAIL's cause of action is far from clear. CONRAIL is attempting to recover the money it voluntarily paid to Elkhart residents who suffered damages as a result of the chemical leak. Initially, one might think that CONRAIL has no cause of action at all since, by its own admission, it *voluntarily* paid the damages and the universal rule is that a volunteer cannot recover from those actually liable. *Slaughter v. Pennsylvania X–Ray Corp.,* 638 F.2d 639,

640 (3d Cir.1981) (Pennsylvania law); *Mitchell v. New York Hospital,* 61 N.Y.2d 208, 473 N.Y.S.2d 148, 461 N.E.2d 285, 289 (N.Y.1984) (New York law); *Sink & Edwards, Inc. v. Huber, Hunt & Nichols, Inc.,* 458 N.E.2d 291 (Ind.App.1984) (Indiana law). Assuming that CONRAIL would not allege it is a volunteer in that sense, then CONRAIL only has a cause of action against the defendants if it was itself liable to the Elkhart residents, or at least so potentially liable that settlement was prudent.

We can think of two ways in which CONRAIL could have been liable. First, CONRAIL could have been liable to the Elkhart citizens if the chemical leak was in some way caused by its negligence. Second, CONRAIL could claim to have been strictly liable based on its transportation of the chemical, an abnormally dangerous activity as defined by Restatement (Second) of Torts §§ 519 & 520 (1977).[2] Indeed, CONRAIL hints that this is its claim since, in its appellate brief and at oral argument, it insisted that it was not negligent in this case. At oral argument we directly asked CONRAIL whether its theory of its own liability rested on strict liability or negligence. The answer we received was evasive at best. Under these circumstances, we will accept CONRAIL's contention that it was not negligent and will analyze the case under the assumption that CONRAIL's theory of its own liability is strict liability based upon its performance of an abnormally dangerous activity. We will also assume, for purposes of this case, that Indiana would hold that transporting toxic chemicals is an abnormally dangerous activity.[3]

**2.** Restatement (Second) of Torts § 519 states that "[o]ne who carries on an abnormally dangerous activity is subject to liability for harm ... resulting from the activity, although he has exercised the utmost care to prevent the harm." § 520 sets out a multi-factor test for determining when an activity is "abnormally dangerous."

**3.** It is unlikely that Indiana actually would recognize the transportation of toxic chemicals as an abnormally dangerous activity subject to strict liability. In a somewhat analogous situation, an Indiana appellate court held that the manufacture and storage of chlorine gas was

not an abnormally dangerous activity. *Erbrich Products Co., Inc. v. Wills,* 509 N.E.2d 850 (Ind. App.1987). Indeed, Indiana courts have generally been reluctant to impose strict liability based on the abnormally dangerous activity doctrine. *See Bridges v. Kentucky Stone, Inc.,* 425 N.E.2d 125 (Ind.1981) (storage of dynamite not an abnormally dangerous activity); *Hedges v. Public Service Co. of Indiana,* 396 N.E.2d 933 (Ind.App.1979) (supply of electricity not an abnormally dangerous activity). Of course, if Indiana would not recognize CONRAIL's activity as abnormally dangerous then CONRAIL would not have been liable to the Elkhart resi-

As in *Hubbard,* CONRAIL's theory of its own liability inexorably ties this action to Indiana. The escape of the abnormally dangerous substance took place in Indiana. Given that contact with the state, we find that Indiana does have a significant contact with the litigation. We must thus apply the *lex loci delicti* rule and, accordingly, use Indiana substantive law to decide this case. As there is no dispute that Indiana does not recognize actions for contribution among joint tortfeasors, *Jackson v. Record,* 211 Ind. 141, 5 N.E.2d 897 (1937); *Elcona Homes Corp. v. McMillan Bloedell, Ltd.,* 475 N.E.2d 713, 715 (Ind.App. 1985), the district court was correct to dismiss the action.

AFFIRMED.

---

dents and its payments would have been made as a volunteer.