**SOO LINE RAILROAD COMPANY,**
**a Minnesota corporation, Third–**
**Party Plaintiff–Appellant,**

v.

**David Bruce OVERTON, Third–**
**Party Defendant–Appellee.**

**No. 91–2722.**

United States Court of Appeals,
Seventh Circuit.

Argued April 8, 1992.

Decided March 31, 1993.

Rehearing Denied May 3, 1993.

---

Jack M. Freedman, Michael R. Conner, Barnes & Thornburg, Indianapolis, IN, Eric J. Magnuson (argued), Roger R. Roe, Jr., David T. Klapheke, Rider, Bennett, Egan & Arundel, Minneapolis, MN, for plaintiff-appellant.

C. Wendell Martin, Timothy E. Hollingsworth (argued), Martin, Wade, Hartley & Hollingsworth, Indianapolis, IN, Jon A. Hanson, Hanson & Lulic, Minneapolis, MN, for defendant-appellee.

Before BAUER, Chief Circuit Judge, RIPPLE, Circuit Judge, and BURNS, Senior District Judge.[*]

JAMES M. BURNS, Senior District Judge.

Soo Line Railroad Company (Soo Line) appeals the district court's grant of summary judgment to David Bruce Overton on the grounds that the district court erred in its choice of law and the district court's application of Indiana law to Soo Line's third-party contribution claim was fundamentally unfair after the state court applied Minnesota law to the underlying tort action.

We have jurisdiction under 28 U.S.C. § 1291 (1988).

## BACKGROUND AND PROCEDURAL HISTORY

In May 1986, Brian Overton was driving his father's car; Julie and Christina Moore (the Moores) were passengers. The three teenagers were killed when the car collided with a Soo Line train in Indiana; all three were Indiana residents. Soo Line is a Minnesota corporation with its principal place of business in Minnesota.

David Bruce Overton was appointed personal representative and administrator of his son's estate in Indiana. Bonita Overton was appointed trustee for Brian's next-of-kin for the purpose of initiating litigation related to the accident. Both David and Bonita[1] were Indiana residents.

In May 1988, Bonita, as trustee for Brian's next-of-kin, and the trustee for the Moores filed a wrongful death action against Soo Line in the District Court of Hennepin County, Minnesota. This forum was apparently chosen because Minnesota's wrongful death statute provided far more generous remedies than the law of Indiana.[2] Soo Line moved to dismiss the action on the ground of *forum non conveniens*, arguing that the correct forum was Indiana. The state court denied Soo Line's motion on the ground that Indiana law provided little or no remedy and indicated that it, therefore, favored Minnesota law. Soo Line then petitioned the Minnesota Court of Appeals for a writ of mandamus and filed a Petition for Accelerated Review with the Minnesota Supreme Court; both petitions were denied.

On September 7, 1989, the state court granted Soo Line's motion to implead David in a third-party action for contribution and/or indemnity in his capacity as owner of the vehicle involved in the accident and as representative of his son's estate.[3]

---

[*] The Honorable James M. Burns, Senior District Judge for the District of Oregon, is sitting by designation.

[1.] For the purpose of clarity, the Overtons will hereinafter be referred to by first name: Brian, decedent; David, father of Brian and administrator of Brian's estate in Indiana; and Bonita, mother of Brian and trustee for Brian's next-of-kin.

[2.] At the time, Indiana's wrongful death statute only provided for recovery of funeral expenses. Ind.Code § 34-1-1-2 (1985). Minnesota law allowed recovery for actual pecuniary loss of contributions and services, including advice, comfort, assistance, and protection. *See Fussner v. Andert*, 261 Minn. 347, 349-53, 113 N.W.2d 355,

357-59 (1961) (construing Minn.Stat. § 573.-02(1)).

[3.] Although David was insured by Indiana Farmers Mutual Group for $300,000, Minnesota did not permit a direct action against an insurer prior to recovery of judgment against the insured. *See Davis v. Furlong*, 328 N.W.2d 150, 152 (Minn.1983).

Soo Line was unable to obtain personal jurisdiction over David since he had no contacts with Minnesota. The Minnesota state court granted Soo Line's request to have David deposed in Minnesota (even though David had already been deposed in Indiana) in order to allow Soo Line to serve David. David was served immediately following completion of the truncated deposition.

In January 1990, the state court granted David's motion to reassign the case to another judge; the court also severed the third-party action *sua sponte,* joined by motion of the trustee for the Moores, to avoid delay of the trial in the underlying action scheduled for January 22, 1990. On January 5, 1990, the state court granted David's motion to remove the third-party action to the United States District Court for the District of Minnesota on the basis of diversity.

On January 11, 1990, the parties to the underlying action reached a settlement: Soo Line agreed to pay $300,000 and $50,000 respectively to the trustee for the Moores and to Bonita as trustee for Brian's next-of-kin.

In April 1990, the United States District Court for the District of Minnesota granted David's motion to transfer the third-party action to the United States District Court for the Southern District of Indiana, Evansville Division (for convenience, hereinafter referred to as the Indiana district court), pursuant to 28 U.S.C. § 1404(a) (1982).

In June 1990, David moved for summary judgment on the grounds that, *inter alia,* Indiana law governed Soo Line's third-party action; Soo Line had no valid claim under Indiana law for vicarious liability, contribution and/or indemnity; and the Indiana statute of limitations for tort actions had expired. The Indiana district court granted David's motion.

## STANDARD OF REVIEW

■ We review a district court's choice-of-law decision *de novo. Autocephalous Greek–Orthodox Church of Cyprus v. Goldberg and Feldman Fine Arts, Inc.,* 917 F.2d 278, 286 n. 9 (7th Cir.1990). A grant of summary judgment is also reviewed *de novo. PPG Industries, Inc. v. Russell,* 887 F.2d 820, 823 (7th Cir.1989). The appellate court's review is governed by the same standard used by the trial court under Fed.R.Civ.P. 56(c). *See generally, Dribeck Importers, Inc. v. G. Heileman Brewing Co., Inc.,* 883 F.2d 569, 573 (7th Cir.1989).

The issue of the impropriety of service of process

## DISCUSSION

Soo Line asserts the Indiana district court erred in its choice of law and the Indiana district court's application of Indiana law to this action was fundamentally unfair after the state court applied Minnesota law to the underlying tort action; therefore, Soo Line contends, the Indiana district court erred when it granted summary judgment in favor of David.

*Choice of Law*

■ The general rule in a federal diversity action is that the court must look to the whole law of the forum in which it sits, including that state's choice-of-law rules. *Coldwell Banker & Co. v. Karlock,* 686 F.2d 596, 600 (7th Cir.1982) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941)). When a diversity action is transferred as the result of a motion by a defendant, the law of the transferor district is applied as if there had been no more than "a change of courtrooms." *Van Dusen v. Barrack,* 376 U.S. 612, 639–40, 84 S.Ct. 805, 820–21, 11 L.Ed.2d 945 (1964). *See also Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 220–22 (7th Cir. 1986). The parties do not dispute that a conflict of law exists, the law at issue is substantive, and the controlling choice-of-law rules are those of Minnesota.

The crux of the issue Soo Line brings before us is whether the Indiana district court erred when it concluded Indiana law was applicable to this action because application of Minnesota law would deprive David of his rights to due process under the United States Constitution and would violate the Full Faith and Credit Clause.

■ Minnesota has adopted a five-part methodology to resolve conflicts of law, two elements of which are specifically applicable to tort actions: Determination of whether the forum's governmental interests would be advanced by the state's law and which state has the better rule of law. *Milkovich v. Saari,* 295 Minn. 155, 161, 203 N.W.2d 408, 412 (1973). *See also Meyer v. Chicago, Rock Island and Pacific R. Co.,* 508 F.2d 1395, 1396 (8th Cir.1975). This methodology re-

on David in Minnesota is not before us.

flects Minnesota's emphasis on policy as well as factual considerations. *Milkovich,* 295 Minn. at 161–62, 203 N.W.2d at 412–13.

■ The United States Supreme Court, however, has recognized that the Due Process and Full Faith and Credit[4] Clauses of the United States Constitution "provide[ ] modest restrictions on the application of forum law." *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 819, 105 S.Ct. 2965, 2978, 86 L.Ed.2d 628 (1985). For the application of a state's substantive law to be constitutionally permissible, sufficient contacts with that state must exist to ensure the choice of law is "neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 313, 101 S.Ct. 633, 640, 66 L.Ed.2d 521 (1981). Although Minnesota, like other states, enacts its own rules for resolving conflicts of law, Minnesota courts have acknowledged that the facts of a case must initially be tested against the threshold standard of whether the contacts with a state are sufficient to make application of that state's law consistent with due process. *Hime v. State Farm Fire & Casualty Co.,* 284 N.W.2d 829, 832 (Minn.1979), *cert. denied,* 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). *See also Schwartz v. Consolidated Freightways Corp. of Delaware,* 300 Minn. 487, 492, 221 N.W.2d 665, 668 (1974) ("[o]nce jurisdiction attaches, the forum may, subject to minimal due process standards, apply its own choice-of-law rules to determine what law governs the case").

*Minnesota Contacts with the Wrongful Death Action*

The state court denied Soo Line's motion to dismiss the wrongful death action on the basis of *forum non conveniens* and rejected Soo Line's contention that Indiana law governed. The state court found the remedy under Indiana law so inadequate and "glaringly defective" that Indiana, in effect, provided no remedy. This statement encompasses the breadth of the state court's analysis.

Although the state court's analysis might be viewed as satisfying the tests under Minnesota's choice-of-law rules (i.e., determination of whether the forum's interest is advanced and which state has the "better rule of law"), the state court neglected to address the threshold issue of whether the facts in the wrongful death action constituted sufficient contacts with Minnesota to satisfy minimal due process requirements. After noting same, the Indiana district court engaged in its own lengthy and thorough analysis.

The Indiana district court relied on the two leading cases that set out the limitations imposed by the federal constitution for resolution of conflicts of law between states: *Allstate Ins. Co. v. Hague* and *Phillips Petroleum Co. v. Shutts.* In *Allstate,* the Supreme Court found the contacts between the forum and the parties were sufficient to satisfy constitutional requirements (decedent was a member of the forum state's work force; decedent commuted to the forum state each workday; defendant insurance company did substantial business in the forum state and was familiar with its law; and plaintiff, personal representative for the purpose of filing suit, moved to the forum state post-transaction, pre-litigation). In *Shutts,* a class action, the Court found the contacts between the parties, the transactions, and the forum were too slight to permit the application of the forum's law (97% of the parties had no connection with the forum state and 99% of the gas leases at issue related to property outside the forum state).

■ The Indiana district court, in turn, looked at the contacts between the parties, the wrongful death action arising from Brian's death, and the state of Minnesota. The court found the accident occurred in Indiana; the decedents were Indiana residents; the owner of the vehicle was an Indiana resident; the vehicle was registered and insured in Indiana by an Indiana insurance company; Bonita, trustee for Brian's next-of-kin for the purpose of initiating litigation, was a resident

---

4. The Full Faith and Credit Clause of the United States Constitution requires the forum to respect the laws and judgments of sister states subject to its own interest in furthering the forum state's policy. *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 335–36, 101 S.Ct. 633, 651–52, 66 L.Ed.2d 521 (1981).

of Indiana; and Soo Line did business in and complied with the laws of Indiana. Soo Line's status as a Minnesota corporation and the suit filed in Minnesota constituted the only contacts with Minnesota. The Indiana district court concluded the contacts with Minnesota were casual and insignificant and, therefore, application of Minnesota law to the wrongful death action was constitutionally impermissible. We agree; however, only the third-party contribution action is before us.

*Third–Party Contribution Claim*

Soo Line argues that even if the Indiana district court was correct when it concluded Indiana law should have been applied to the wrongful death action,[5] the Indiana district court erroneously focused on the underlying tort when it concluded Indiana law also applied to Soo Line's third-party contribution claim. Although we found in *Consolidated R. Corp. v. Allied Corp.*, 882 F.2d 254, 256–57 (7th Cir.1989), that the choice of law governing contribution actions is not determined by the circumstances of the underlying tort and that contribution actions are subject to the same rules used to resolve conflicts of law in tort cases, we also noted the circumstances of the underlying tort constitute a significant contact to be considered.

■ In its order and memorandum, the Indiana district court recognized that Soo Line's contribution claim could be governed by the law of a state other than the one controlling the underlying tort action and, accordingly, did not solely rely on its analysis of the circumstances underlying the tort action. The Indiana district court carefully considered Soo Line's contentions that (1) Minnesota law should govern Soo Line's contribution claim because Bonita, as trustee for Brian's next-of-kin, filed the wrongful death action in Minnesota to reap the benefits of Minnesota's liberal tort recovery law, and (2) Minnesota law should govern because Minne-

sota has a strong interest in ensuring Soo Line's right as a Minnesota citizen to ameliorate the burden of Minnesota's provisions for joint and several liability by pursuing a claim for contribution.[6] The Indiana district court was not persuaded by Soo Line's arguments; neither are we.

1. Minnesota Litigation

We find the Indiana district court did not err when it found that Bonita's initiation of the wrongful death action in Minnesota could not be considered a contact sufficient to satisfy minimal due process requirements. *See Shutts*, 472 U.S. at 821, 105 S.Ct. at 2979 (jurisdiction over the underlying action cannot be considered a contact to bolster the application of that forum's law).

2. Minnesota's Interest

In the past, we have given significant weight to a state's interest in applying the whole of its tort law to include third-party claims generated from the underlying action. In *Miller v. Long–Airdox Co.*, 914 F.2d 976 (7th Cir.1990), we held that Illinois law, the choice of law applicable to the underlying tort, was also the appropriate law to determine the third-party contribution claim. Miller, a miner, filed a tort claim against Long–Airdox for injuries he received while working with a feeder manufactured by Long–Airdox; Long–Airdox, in turn, filed a third-party claim for contribution against Amax Coal Company, Miller's employer. Amax conceded Illinois law governed Miller's underlying claim against Long–Airdox by virtue of Indiana statute; however, Amax contended Indiana law applied to the contribution claim. Miller's action against Long–Airdox was pending at the time. We found

.... it makes little sense to apply Indiana's law regarding contribution to a case involving Illinois tort law. When a state formulates its tort law, it must ...

5. In fact, Soo Line argued before the state court that the law of Indiana governed the wrongful death action.

6. Tortfeasors were jointly and severally liable under Minnesota law, but a party who paid more than its proportionate share of the damages awarded was allowed to file an action for contribution and/or indemnity from joint tortfeasors. *Bekis v. Schilling*, 357 N.W.2d 362, 364 (Minn. App.1984). *See also* Minn.Stat. §§ 604.01–04 (1982). Indiana, in contrast, did not permit actions for contribution, but neither did it burden tortfeasors with joint and several liability. Ind. Code § 34–4–33–7 (1983).

balance several different policies including deterring wrongdoers, compensating injured parties, spreading the risk of loss from certain activities, and trying to accomplish these goals without overly discouraging productive activity. Whether or not to allow contribution among joint tortfeasors can be an important part of this balance. For example, a state may provide generous compensation to injured parties ... but temper the effect of these provisions by providing contribution so that the loss may be spread among several defendants. Contribution can also affect the certainty and amount of a plaintiff's recovery by encouraging settlement.

*Id.* at 979. Unlike the case before us, however, the sufficiency of the contacts between Illinois and the underlying tort claim was not an issue because of Indiana's statutory mandate; therefore, the constitutionality of applying Illinois law to the underlying tort claim was not in doubt.

Soo Line argues Minnesota has a strong interest in upholding its policy entitling a party to pursue contribution and/or indemnity where the party sustained damage by paying a disproportionate share of a loss or by discharging a liability that should be the responsibility of another; however, neither share nor liability had been determined and the constitutional permissibility of applying Minnesota law remained uncertain when Soo Line agreed to a settlement. As the Indiana district court accurately noted, a settlement agreement between the parties "without more" does not increase the number of contacts.

If the Minnesota state court had evaluated Minnesota's contacts with the tort action arising from Brian's death and been able to reasonably conclude the contacts were sufficient to make application of that state's law consistent with minimal due process requirements (i.e., if the facts surrounding the tort action had been different), the contacts between the third-party contribution claim and Minnesota would have been strengthened. If Soo Line had been identified as a tortfea-

sor and held liable under Minnesota statutes, Minnesota would have had a stronger interest in permitting Soo Line to lessen the onerous financial burden of Minnesota's provisions for joint and several liability by pursuing contribution claims against joint tortfeasors.[7] *See generally, Miller v. Long–Airdox Co.*, 914 F.2d 976 (7th Cir.1990). We are not, however, faced with either of these scenarios. We find, therefore, Minnesota's interest in applying its law to the third-party contribution claim is not strong in light of the circumstances before us.

After reviewing the Indiana district court's consideration of the circumstances underlying the tort action, the relationship between the parties and the claims pertinent to the third-party contribution action, and the interests of both Minnesota and Indiana, we find the Indiana district court did not err in either its analysis or its choice of law.

*Fundamental Fairness*

■ Soo Line argues it would be fundamentally unfair to apply Indiana law to its contribution claim after it agreed to a settlement with the assumption that Minnesota law would govern. Soo Line also argues it would be fundamentally unfair to apply any law other than that of Minnesota after David indirectly, as one of Brian's next-of-kin, reaped the benefits of Minnesota's liberal tort recovery law.

Historically Minnesota courts have been inclined to view Minnesota law and policy as "the better rule" when faced with conflicts of law, particularly when the law of the other state is inconsistent with Minnesota's concepts of fairness and equity. *Hime*, 284 N.W.2d at 833. Here the state court indicated it favored the law of Minnesota in its order denying Soo Line's motion to dismiss the wrongful death action on the basis of *forum non conveniens*. The Indiana district court, however, took the view that the state court's order "was not an affirmative statement that Minnesota substantive law would be applied to every aspect of the case." The tenuous language with which Soo Line chose

---

**7.** Lest any confusion arise, we do not intend to discourage settlement prior to judgment nor to discredit the power of a state's liability laws to influence settlement. We merely point out the circumstances before us do not include a third-party plaintiff who was compelled to meet the burden of Minnesota's liability laws after judgment was imposed.

to frame its view of the state court's ruling supports the Indiana district court's conclusion: In its Memorandum in Opposition to David's Motion for Summary Judgment, Soo Line stated it entered into a settlement with the trustees on the assumption that it "faced ... the *nearly certain prospect* based on the [state] court's prior comments and rulings that the court would apply Minnesota rather than Indiana substantive law with respect to joint and several liability" (emphasis added); in its opening appellate brief, Soo Line reiterated that it assumed it was "faced with the prospect that the court would apply Minnesota law."

The Indiana district court also pointed out it was not, when deciding the motion for summary judgment regarding the choice of law applicable to the third-party contribution claim, bound by the state court's ruling on Soo Line's motion to dismiss the wrongful death action. *See generally, Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir.1991). *See also Consolidated R. Corp. v. Allied Corp.*, 882 F.2d at 257.

In light of the uncertainty as to the intended breadth of the state court's ruling and in the absence of the state court's evaluation of the contacts between the parties, the wrongful death action, and the state of Minnesota, a brief look at the conduct of the parties may assist us in determining whether it would be fundamentally unfair to apply Indiana law to Soo Line's third-party contribution claim under these unusual circumstances.

Soo Line agreed to a settlement of the wrongful death action shortly after its third-party contribution claim was severed from the underlying tort case, six days after David removed the third-party action to federal court, and eleven days before the scheduled trial date of the wrongful death action. In the midst of these events, Soo Line gave up its rights to continue litigating the case, to protest the application of Minnesota law, and to appeal any judgment in the tort action that might have been crafted under the law of Minnesota. Soo Line settled even though the constitutional permissibility of applying Minnesota law to the wrongful death action was undetermined by the state court and the burden of Minnesota's liability statutes had not been imposed.

Soo Line faults David for indirectly benefiting from settlement of the wrongful death action and for his maneuvers in the contribution case as third-party defendant. Ironically, David's tactics were almost duplicative of those on Soo Line's wish list: Soo Line sought to have Indiana law applied to the wrongful death action (in which case, Soo Line could have averted the burden of joint and several liability under Minnesota law); Soo Line also, by its own admission, wanted to remove the underlying tort action from the Minnesota state court to the United States District Court for the District of Minnesota with the intention of transferring the case to the district of Indiana. In effect, David benefitted from his success in strategies that Soo Line intended but chose not to pursue.

We are not here to critique Soo Line's premature and perhaps hasty settlement in light of the circumstances; we are not here to question the wisdom of Soo Line's settlement terms; and we are not here to remedy the fallout from Soo Line's mistaken assumptions regarding the federal court's prospective conduct of the third-party contribution action. We do not find the Indiana district court's application of Indiana law to Soo Line's third-party contribution claim is fundamentally unfair under the circumstances.

## CONCLUSION

Based on the foregoing, we find the Indiana district court did not err when it concluded Indiana law governed Soo Line's third-party contribution claim because application of Minnesota law would deprive David of his rights to due process under the United States Constitution and violate the Full Faith and Credit Clause. We also find no error in the Indiana district court's application of Indiana law to Soo Line's vicarious liability, contribution, and indemnification claims; therefore, the Indiana district court's grant of summary judgment in favor of David Bruce Overton is AFFIRMED.

AFFIRMED.

RIPPLE, Circuit Judge, dissenting.

This case gives new meaning to the familiar maxim that hard cases make bad law. It requires that we deal with the always difficult area of constitutional limitations on choice of law. It also requires that we apply those principles to the issue of contribution among tortfeasors, an area in which choice of law rules are underdeveloped. Lastly, we must accomplish this task in the always cumbersome procedural context of federal transfer jurisdiction under 28 U.S.C. § 1404(a). The task of our colleague in the district court and of my colleagues on this appellate panel has consequently been a formidable one and it is with a great deal of respect for their efforts that I reluctantly file this dissenting opinion. While I believe that my colleagues have labored with great skill in the "dismal swamp," [1] I respectfully disagree with both their analysis and their conclusion.

At the outset, it is worth noting that this case is not only important to the parties; it is also important to the development of the law of this circuit. This is the first case since the Supreme Court's latest guidance in *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), and *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), in which this circuit has struck down, on constitutional grounds, a state choice of law rule. It must provide, therefore, meaningful guidance for the courts of this circuit in future cases. In my view, the court's disposition establishes an approach that is incompatible with the current jurisprudence of the Supreme Court in this area and therefore sets the wrong vector for this circuit's compliance with the mandate of that Court.

### 1. ·

Before we begin our assessment of the issue decided by the majority, I suggest that we ought to examine more closely an assumption at the heart of the analysis of the

district court and of the majority. In both instances, it is assumed that Minnesota would in fact insist on the application of its own law with respect to the matter of contribution. This assumption is predicated on the general inclination of Minnesota to favor the application of its own law on tort matters. I suggest that it was incumbent on the district court to engage in a more precise inquiry into that issue, rather than simply making that assumption. In this area, as in all instances in which constitutional issues are involved, a federal court ought to reach the constitutional issue only out of necessity.[2]

The Supreme Court did not have to consider this problem in either *Allstate* or *Shutts.* Both cases came to the Court on direct review from the state supreme courts. Those courts had already applied their own state's law in the face of the defendants' arguments that there were insufficient contacts with the forum state. It is worth noting, however, that, in *Shutts,* 472 U.S. at 816, 105 S.Ct. at 2976, the Court did indicate that it was required to determine initially whether there was a conflict in the laws of the several states which would affect materially the outcome of the litigation.

### 2.

Before we turn to the court's resolution of the constitutional issue, we ought to pause to recall why this controversy over the appropriate choice of law is important to the outcome of this litigation. Minnesota and Indiana tort law differ in several respects, alternately favoring and disfavoring each of the parties here. First, as noted, Minnesota permits contribution, while Indiana does not. On the other hand, while Minnesota makes each co-defendant initially liable, as a joint tortfeasor, for the entire amount of the plaintiff's injury, Indiana would make each tortfeasor only liable for the percentage of its own fault in causing the plaintiff's injury.[3] Finally, as noted, the amount of damages a

---

1. Prosser, *Interstate Publication,* 51 Mich.L.Rev. 959, 971 (1953).

2. *Cf. Edwardsville Nat'l Bank & Trust Co. v. Marion Labs., Inc.,* 808 F.2d 648, 651–52 (7th Cir. 1987) (no need to reach issues raised by *Allstate* and *Shutts,* since Illinois would decline to apply its law to dispute having only limited contacts with state); *see also Ashwander v. Tennessee Valley Auth.,* 297 U.S. 288, 341, 56 S.Ct. 466, 480, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

3. *See supra* n. 6 of the majority opinion.

plaintiff may recover for a wrongful death action is substantially higher under Minnesota law than under Indiana law.[4]

It is also important that we keep in mind that we are dealing not with the fashioning of choice of law rules but simply with setting the outer limits, imposed by the constitution, on the formulation of those choice of law rules. In this complex and murky area, it is indeed easy to lose one's bearings and to slip from a focus on the constitutional limitations on choice of law to the choice of law rules themselves. In this case, the distinction is crucial. If we were engaged in the second inquiry and attempting to decide what state's law to apply as a matter of conflict of laws jurisprudence, a respectable case could be made for the application of Indiana law. *See Consolidated Rail Corp. v. Allied Corp.*, 882 F.2d 254, 257 (7th Cir.1989); Restatement, Second, Conflict of Laws § 173, comment a ("Most cases to date have held that the question of contribution between joint tortfeasors is determined by the local law of the state of conduct and injury."). Here, however, we are dealing only with constitutional limitations on a state's authority to fashion such a rule.

### 3.

Discernment of the constitutional limitations on state choice of law decisions has always been a difficult task for the bench and bar. As Justice Jackson so eloquently stated in his famous Cardozo Lecture to the Association of the Bar of the City of New York,[5] the guideposts established by the Supreme Court are vague and indistinct. Indeed, as the Justice also suggested, the lack of constitutional decision-making in this area may constitute a deliberate choice on the part of the Court. In the early days of this century, the Court attempted to forge a jurisprudence that inevitably would have resulted in making almost all our conflict of law constitutional rules.[6] However, since that time, the Court has made it clear that, in this area, the states have a great deal of flexibility in the fashioning of choice of law rules. Neither *Allstate* nor *Shutts* attempts to cabin, beyond the most basic requirements of fairness to the litigants and the maintenance of interstate comity, the ability of a state to fashion choice of law rules. Therefore, a state's approach need not be the majority rule or even the minority rule. It simply must conform to constitutional constraints.

The limits on the ability of a state to apply its own law to particular litigation with which it may have limited contacts have been considered by the Supreme Court in a line of cases dating back to the early part of the century.[7] The substantial majority of these cases upheld the right of the state to apply its own law to the transaction, in the face of challenges of insufficient contacts. The core doctrine developed in these cases was recently reiterated in *Allstate* as follows:

> In deciding constitutional choice-of-law questions, whether under the Due Process Clause or the Full Faith and Credit Clause, this Court has traditionally examined the contacts of the State, whose law was applied, with the parties and with the occurrence or transaction giving rise to the litigation....

449 U.S. at 308, 101 S.Ct. at 637–38 (footnote omitted).

---

4. *See supra* n. 2 of the majority opinion.

5. Jackson, *Full Faith and Credit—The Lawyer's Clause of the Constitution*, 45 Colum.L.Rev. 1, 16, 17, 26–27 (1945).

6. *See Mutual Life Ins. Co. v. Liebing*, 259 U.S. 209, 42 S.Ct. 467, 66 L.Ed. 900 (1922); *New York Life Ins. Co. v. Dodge*, 246 U.S. 357, 38 S.Ct. 337, 62 L.Ed. 772 (1918) (applying the "vested rights" theory of due process to contract choice of law rules).

7. *See, e.g., Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979); *Clay v. Sun Ins. Office, Ltd.*, 377 U.S. 179, 84 S.Ct. 1197, 12 L.Ed.2d 229 (1964); *Carroll v. Lanza*, 349 U.S. 408, 75 S.Ct. 804, 99 L.Ed. 1183 (1955); *Watson v. Employers Liability Assurance Corp.*, 348 U.S. 66, 75 S.Ct. 166, 99 L.Ed. 74 (1954); *Cardillo v. Liberty Mutual Ins. Co.*, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028 (1947); *Pacific Employers Ins. Co. v. Industrial Accident Comm.*, 306 U.S. 493, 59 S.Ct. 629, 83 L.Ed. 940 (1939); *John Hancock Mutual Life Ins. Co. v. Yates*, 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); *Alaska Packers Ass'n v. Industrial Accident Comm.*, 294 U.S. 532, 55 S.Ct. 518, 79 L.Ed. 1044 (1935); *Home Ins. Co. v. Dick*, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930).

[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.

*Id.* at 312–13, 101 S.Ct. at 640.

In *Allstate,* that requirement was satisfied by three factors: (1) the plaintiff's decedent's status as a member of the forum state's work force; (2) the defendant insurance company's presence and substantial (albeit unrelated) business activities in the forum state; and (3) the plaintiff's post-transaction, pre-litigation move to the forum state. Notably, all three of these factors involved contacts between the forum and the parties; there were no contacts between the forum and the underlying occurrence.

*Shutts* was a class action brought in a state court in Kansas, asserting claims in behalf of plaintiffs, 97% of whom did not have connections with Kansas, and involving property, 99% of which was outside of Kansas. Distinguishing *Allstate,* the Supreme Court held that the connections of these parties and the transactions were too slight to allow the Kansas court to apply forum law to this litigation. The application of Kansas' law to a transaction which involved an overwhelming majority of parties and transactions with no Kansas contacts, merely because the nominal class-action plaintiff had those connections, would have allowed the tail to wag the dog in a way inconsistent with constitutional limitations.

These two decisions embody the same core considerations. The different result was the product of the absence in *Shutts* of any meaningful connection between the overwhelming majority of plaintiffs and their claims with the forum state. *Shutts,* moreover, refines the policy concerns underlying the constitutional limitations on the ability of a state to apply its own law to a dispute. In *Shutts,* the Court implicitly incorporated, *see* 472 U.S. at 818–19, 105 S.Ct. at 2977–78, the importance given in Justice Powell's dissent in *Allstate* to the two policy factors underlying the constitutional limitations on application of forum law. Quoting from that opin-

ion, the Court emphasized these two concerns. First, "the contacts between the forum State and the litigation should not be so 'slight and casual' that it would be fundamentally unfair to a litigant for the forum to apply its own State's law.... The touchstone here is the reasonable expectation of the parties." 449 U.S. at 333, 101 S.Ct. at 651 (citations omitted). Second, "the forum State must have a legitimate interest in the outcome of the litigation before it." *Id.* at 334, 101 S.Ct. at 651. Finally the Court noted that the mere fact that a plaintiff would prefer application of forum law is "rarely, if ever controlling." *Shutts,* 472 U.S. at 820, 105 S.Ct. at 2978.

4.

*Allstate* and *Shutts,* as well as their doctrinal ancestors,[8] do not reduce the constitutional inquiry to mere contact counting. Resolution of this dispute must turn on an analysis of the relevant constitutional policy considerations that restrict a state's otherwise unfettered choice of its own law to apply to a dispute.

The first inquiry suggested by *Shutts* is whether it is "fundamentally unfair" to apply Minnesota law to Mr. Overton. This inquiry requires, in the context of this case, a pragmatic assessment of a somewhat unusual litigation situation. It is unrealistic, I suggest, to ignore Mr. Overton's relationship with the underlying action. Although he was not a party, his wife, as trustee for their deceased son's next of kin, brought the underlying tort action in Minnesota. Mr. Overton appears, it should be remembered, as executor of that son's estate. While the Minnesota court had not yet made a definitive ruling that Minnesota law (which was favorable to Mrs. Overton) would apply, its denial of Soo Line's forum non conveniens motion was a good indication that, if the matter had gone to trial, that state's law would have been applied. No doubt, the ensuing settlement agreement took the probability that Minnesota law would apply very much into account. Under these circumstances, it hardly seems fair to Soo Line to give Mr. Overton (as his

8. *See supra* n. 7.

son's representative) the benefit of the Minnesota law on remedies in a wrongful death action, but then to allow him to avoid the Minnesota rule regarding the sharing of responsibilities among joint tortfeasors.

Next, we ought to inquire if Minnesota has a "legitimate interest" in the outcome of the litigation. Here, our focus ought to be not on Minnesota's interest in the underlying tort action but its interest in the impact of the settlement agreement on a domestic corporation (Soo Line) which had been sued in Minnesota by an out of state litigant seeking to take advantage of the favorable law. *Shutts* stated that the mere choice of a forum by a plaintiff is "rarely, if ever controlling." 472 U.S. at 820, 105 S.Ct. at 2978. However, here, unlike *Allstate* and *Shutts*, it is the defendant in the original action, rather than the plaintiff, as in those two cases, who seeks application of forum law. The proposition in *Shutts* makes sense; the plaintiff ought not, by choosing a forum, also have that be a "contact" for purposes of allowing application of the forum's law. On the other hand, when it is the defendant who wants to apply the forum's law, it is not unfair to say that the forum has an interest in protecting him from an inequitable application of its judgment. Mr. Overton was not the plaintiff in the original litigation. However, constitutional limitations on the choice of law should not turn on litigation strategies, including the fact that Mrs. Overton, rather than her husband, was named as the trustee for their son. We need not ignore the unity of interest between the original plaintiff and the third-party defendant. It is appropriate to view her contact with the forum as a constitutionally sufficient basis for permitting Minnesota to apply its own law to this dispute, if it would chose to do so.

Indiana and Minnesota follow different approaches to joint liability of tortfeasors and to contribution between tortfeasors. As noted, Minnesota permits contribution; while Indiana does not. On the other hand, while Minnesota makes each co-defendant initially liable, as a joint tortfeasor, for the entire amount of the plaintiff's injury, Indiana would make each tortfeasor only liable for the percentage of its own fault in causing the plaintiff's injury. Finally, as noted, the amount of damages a plaintiff may recover for a wrongful death action is substantially higher under Minnesota law than under Indiana law. The result of both approaches, however, is to reduce the likelihood that one tortfeasor will be subject to complete liability for the plaintiff's entire claim; the sharing of responsibility is consistent with both states' approaches. The result of Mr. Overton's position is a "mix-and-match" of legal rules, which is inconsistent with the result that either an Indiana or a Minnesota court would have reached. Application of Indiana law to the second half of this dispute is not required by the Constitution. Allowing Minnesota to apply its own law to this portion of the dispute, is consistent with *Allstate* and *Shutts*.